# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201500230**

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## ANDREW P. SHOLTES
Lieutenant Commander (O-4), Chaplain Corps, U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Bethany Payton-O'Brien, JAGC, USN.
Convening Authority: Commander, Navy Region Southwest, San Diego, California.
Staff Judge Advocate's Recommendation: Lieutenant Commander, Jonathan Dowling, JAGC, USN. Addendum: Commander D.J. Jones, JAGC, USN.
For Appellant: Lieutenant Jacqueline Leonard, JAGC, USN.
For Appellee: Lieutenant Taurean Brown, JAGC, USN.

———————————

Decided 18 January 2017

———————————

Before PALMER, CAMPBELL, and HUTCHISON, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

CAMPBELL, Senior Judge:

At a contested general court-martial, officer members convicted the appellant of four indecent liberty with a child specifications and three conduct unbecoming an officer and a gentleman specifications, violations of Articles 120, 133, and 134, Uniform Code of Military Justice (UCMJ), 10

U.S.C. §§ 920, 933, and 934 (2012).[1] The convening authority approved the adjudged sentence of a dismissal and 44 months' confinement.

In two original assignments of error (AOEs), the appellant contends the military judge abused her discretion by failing to admit evidence of the victim's prior sexual history and drug use. In a supplemental AOE, he further argues the military judge erred in providing findings instructions to the court-martial members regarding the standard of proof required for conviction.[2] Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In 2003, the appellant, a Navy chaplain, began dating then ten-year-old T.R.'s mother, with whom T.R. lived. The appellant and T.R.'s mother married in early 2005. After the wedding they all lived together in Nevada for a few months until they all moved to the appellant's new duty station in Guam that summer.

At the end of the following year, during December 2006, when she was 13 years old, T.R. remained in Guam with the appellant while her mother visited family in Nevada. During his wife's absence, the appellant handed T.R. a bag of her mother's lingerie from a bedroom closet. He then assisted T.R. in putting on some of the items. He was in the bedroom as she changed into and modeled three different outfits. T.R. recalled the appellant telling her that she had "a perfect ass and that [she] looked sexy" in the lingerie.[3]

A few months afterwards, according to T.R.'s testimony, the appellant talked to her about photographs. He explained that a woman with a body very similar to T.R.'s posted pictures of herself in provocative clothing on the internet for money. He suggested that T.R. should earn income the same way.

Later in 2007, as the appellant and his wife were leaving home for a command function, he told T.R. she could watch a video to "learn how to give

---

[1] Three indecent liberty specifications involve violations of the pre-October 2007 version of Article 134, UCMJ, and one involves a violation of the October 2007 version of Article 120, UCMJ.

[2] We found no error in the use of the same challenged reasonable doubt instruction in *United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), *petition for review filed*, __ M.J. __ (C.A.A.F. Dec. 30, 2016) (No. 17-0168/MC) and in accordance with that holding, we summarily reject the appellant's supplemental AOE here. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[3] Record at 416.

blow jobs."[4] Although their accounts differed about whether he physically handed the instructional video of adults performing oral sex to her, both the appellant and T.R. testified that the tape was in their living room and the appellant at least suggested T.R. view it while she was home alone. The appellant admitted at trial that the video was not appropriate for a 14-year-old. But he explained that at the time he thought it was an effective tool for educating his step-daughter about potential health risks of oral sex.

During 2010, after the family moved to California, the appellant began crediting T.R., now at least s 16 years old, ten dollars per page to write about her sexual encounters as payment towards her automobile repair and insurance expenses. He testified that finding her sexually graphic personal diary entries in 2009 had revealed T.R.'s risky behavior. He hoped journaling for him would help her recognize the self-destructive nature of her actions and also provide research material for a book he intended to write about teenage sexuality.

The appellant deployed in April 2010, but T.R. continued writing journal entries and editing them based on the appellant's feedback—provided via audio recordings and Facebook messages, in which he requested additional sexual details. T.R.'s extended family learned about the journaling during the summer of 2010. Their concerns resulted in T.R. moving to live with her grandparents before the appellant returned from deployment. While T.R.'s mother initially remained with the appellant, they divorced in 2012.

## II. Discussion

### A. Evidence regarding T.R.'s prior sexual behavior

#### 1. Trial proceedings

In a pretrial motion, the trial defense counsel moved to introduce evidence of T.R.'s prior sexual activities, including the journal entries about her teen-aged sexual encounters, under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 412(b)(1)(C), SUPPLEMENT TO THE MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), which excepts evidence "the exclusion of which would violate the constitutional rights of the accused," from the rule's general prohibition of evidence of an alleged victim's "sexual behavior or predisposition."[5] The defense sought use of this evidence to demonstrate that

---

[4] *Id.* at 420.

[5] The defense included five categories of T.R.'s alleged prior sexual behavior and predisposition in the motion *in limine*: (1) teenaged sexual acts with persons other than the appellant; (2) preteen or teenaged "mooning" people; (3) teenaged masturbation; (4) victimization in a non-consensual sexual encounter by a person other than the appellant; and (5) recording journal entries about teenaged sexual acts with persons other than the appellant. Appellate Exhibit XXV.

the appellant's motives for establishing boundaries on T.R.'s behavior were within the lawful bounds of parenting.

The government did not oppose, and actually sought, admission of the journal entries made at the appellant's behest. So as an initial matter, the military judge determined the government could admit the journal entries, with the court giving the members a limiting instruction, for the sole purpose of supporting the allegation that the appellant solicited T.R. to write and provide the entries to him in exchange for money as conduct unbecoming an officer and gentlemen, in violation of Article 133, UCMJ—Charge II, Specification 2. She found all of the other sexual activities, including teenaged sexual acts with persons other than the appellant, irrelevant under MIL. R. EVID. 412(b)(1)(C). But she further ruled that if the appellant "testifie[d] as the defense proffer[ed, some of] the evidence would then become relevant to show the [appellant's] state of mind as to the reasoning behind the journal entry-keeping."[6] Specifically, T.R.'s prior sexual acts with persons other than the appellant were deemed "conditionally relevant upon the [appellant's] testimony . . . that he *believed* T.R. was engaging in reckless sexual behavior . . . ."[7]

Trial defense counsel twice asked for reconsideration of the MIL. R. EVID. 412 ruling—once after the prosecution's opening statement and again after T.R.'s direct examination. Both times the military judge left unaltered her requirement for the appellant's testimony on his concerns about T.R.'s sexual acts with other people before allowing defense questions about the circumstances of that sexual behavior.

T.R. was then cross-examined about the following: (1) the level of involvement her mother and the appellant had in her life while they were a couple, including their discussions with her about sex; (2) the difference between compliments about her physique she received from her mother and the appellant; (3) her virginity and sexuality; (4) the surrounding circumstances of her viewing the oral sex instructional video; (5) the appellant's disapproval of her behavior at times and his corrective actions; (6) the journal entries written for the appellant; (7) the appellant's giving her sex toys as gifts; (8) the circumstances leading to the reports to law enforcement during 2013 and her family's influence on her story; and (9) conversations with her biological parents about potentially filing a civil suit against the appellant.

The appellant later testified that none of his interactions with T.R. were intended to arouse his or her sexual desires and, in fact, he only attempted to

---

[6] *Id.* at 6.

[7] *Id.* (emphasis in original).

4

deescalate hers.[8] Inconsistently, at times, with the MIL. R. EVID. 412 ruling, he testified that he had felt obligated to curb various disturbing sexual behaviors T.R. specifically displayed: recording entries in her personal diary about having sex; having her initial sexual experience occur on a school bus; masturbating with kitchen utensils and her mother's vibrator; electronically sharing her sexually suggestive pictures; and "sexting."[9]

At the resulting Article 39(a), UCMJ, session, the military judge admonished the civilian defense counsel for eliciting testimony directly contravening her ruling (some of the history of masturbation), and for introducing new alleged sexual behavior (additional masturbation and sexting) without complying with the MIL R. EVID. 412 notice requirements. When the members returned, she advised them to disregard those portions of the appellant's testimony.

---

[8] The appellant specifically testified about his motivations regarding the decision to ask T.R. to journal about her sexual experiences:

> To deescalate her sexual experiences, because she was like a runaway train. I—I had a chance to either slow her down or just stand by the tracks and try to flag her down to jump on the train. . . . It's a well[-]established known therapeutic method when we required a patient to face their [sic] pattern of risky or damaging or self-harming behavior to keep a journal so they can—one, they will find their actions accountable, that they will have to write about this.

Record at 632. The appellant further explained what happens when those journaling later read their entries as part of this therapeutic model:

> They go through a negotiating phase when they—when they try to explain why they are doing what they are doing, and it's the—the therapist's job to—to guide that conversation so they will realize what is acceptable and what is not acceptable as opposed to telling them what is acceptable and not acceptable.

*Id.* at 633. Part of the appellant's direct examination unambiguously addressed the defense theory articulated during the MIL. R. EVID. 412 litigation:

> Q: This mode that you chose to deal with burgeoning sexuality, runaway sexuality, that's a fairly unusual thing for a father to do?
>
> A: In America, yeah, I guess so. It's a weird position. It's—can look creepy.
>
> Q: Did you believe that the danger was so great that you had to do something different and unusual?
>
> A: Yes, sir, absolutely.

*Id.* at 634.

[9] *Id.* at 626-46.

*2. Alleged abuse of discretion*

The trial court's decision to admit or exclude evidence under MIL. R. EVID. 412 is reviewed for an abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citing *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010)). "A military judge abuses h[er] discretion when: (1) the findings of fact upon which [s]he predicates h[er] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if h[er] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citation omitted). An abuse of discretion also occurs when "the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo. Roberts,* 69 M.J. at 26.

The appellant now argues the military judge abused her discretion, in that: 1) preventing the appellant from cross-examining T.R. about an oral sex encounter on a school bus before the appellant provided the instructional video to her violated the appellant's constitutional rights to confrontation under the Sixth Amendment, and due process; 2) determining evidence of T.R.'s masturbation was neither relevant nor constitutionally required to defend against the allegations of the appellant gifting T.R. sex toys,[10] resulted from a misapplication of the MIL. R. EVID. 412 balancing test; and 3) excluding evidence of T.R.'s prior sexual acts with persons other than the appellant "impeded [the appellant] from effectively challenging the Government's evidence . . . [on] the intent element" for "more than half of the charges—Charges I and III and all specifications thereunder."[11] We agree

---

[10] Gifts of sex toys, given on different dates and at different locations, were alleged as a violation of Article 120, UCMJ, in the indecent liberty with a child specification under Charge I, and as a violation of Article 133, UCMJ, in one of the conduct unbecoming an officer and gentleman specifications under Charge II.

[11] Appellant's Brief of 19 Jan 2016 at 20-22. The sole specification under Charge I alleged an indecent liberty with a child in violation of Article 120, UCMJ, by giving T.R., a female under the age of 16, a sex toy (dildo) with the intent to arouse the appellant's or her sexual desires. The three specifications under Charge III alleged indecent liberties with a child in violation of Article 134, UCMJ—by respectively having T.R. put on and wear her mother's lingerie for the appellant while he said "you look sexy," with the intent to arouse his sexual desires; encouraging T.R. to take sexually suggestive photographs of herself and publish them online, with the intent to appeal to his sexual desires; and giving T.R. a video depicting adults performing oral sex, with the intent to appeal to her sexual desires.

that the military judge abused her discretion, but only regarding exclusion of the masturbation evidence presented in the MIL. R. EVID. 412 motion.

a. Admissibility of prior oral sex evidence

The appellant avers it was an abuse of discretion to exclude T.R.'s cross-examination "on the school bus incident, which prompted [the appellant] to give her the oral sex video."[12] However, the record and the pleadings clearly indicate such evidence was not actually excluded from the trial.

According to the appellant, in unsuccessfully renewing the motion to reconsider the MIL. R. EVID. 412 ruling after T.R.'s direct examination, "[t]he defense wanted to cross-examine" her about "whether her parents may have had reason to be concerned" and "what may have motivated [the appellant] to respond."[13] Even though the military judge denied the motion to reconsider, the trial defense counsel nonetheless addressed those very concerns during T.R.'s cross-examination:

> Q: You also talked about the topic of losing your virginity and how it came up yesterday. You mentioned that Lieutenant Commander Sholtes initiated these conversations, is that right?
>
> A: Yes.
>
> Q: Just you and him?
>
> A: He did bring it up with my mom once in a restaurant, and then after that he did bring it up along [sic] with myself.
>
> Q: Okay. So I'm clear now. So the—at one point the three of you were there communicating about loss of virginity, right?
>
> A: Yes.
>
> Q: Okay. All right. So this—this sex video thing came up yesterday?
>
> A: Yes.
>
> Q: You described it in detail?
>
> A: Yes.
>
> Q: Your house—do you have more than one video in your house?
>
> A: Yes.

---

[12] *Id.* at 14.

[13] *Id.* (footnote omitted).

Q: Everybody's digitally downloading now, but at that time did you have like a bookshelf of videos?

A: Yes.

Q: That's in your family room?

A: Yes.

Q: Near wherever the—the DVD player or something?

A: Yes.

Q: One of those videos was this sex education video, right?

A: I don't recall it being out in the open. I believe that he grabbed it from his room.

Q: Right. That's what you said yesterday.

A: Yes.

Q: Okay. So you have this video. You asked your mom and Lieutenant Commander Sholtes if you could watch it, right?

A: No. He told—he handed the video to me, and he told me to watch this so I could learn how to give blow jobs.

Q: So—thank you. So your testimony is that he handed you the video to watch?

A: Yes.

Q: You didn't get it yourself?

A: No.

Q: Didn't talk to your parents about it?

A: Not that I recall.

Q: They didn't bring anything up about a concerned behavior?

A: No.[14]

The appellant also notes that "[t]he military judge's ruling made evidence of T[.]R[.]'s prior sexual acts with persons other than [the appellant] conditionally relevant on his testimony[,]" so he "was not precluded from testifying about his knowledge of T[.]R[.]'s sexual activity."[15] Consequently, evidence regarding T.R.'s prior oral sex was part of the appellant's testimony during his direct examination by the civilian trial defense counsel:

---

[14] Record at 485-87.

[15] Appellant's Brief of 19 Jan 2016 at 19.

Q: How early did—were there reports by T.R. of shocking behavior that concerned you, at what point?

A: I think 2007 was the first time when I came back from Vladivostok with the ship and I was told that T.R. had her first sexual experience on a school bus.

Q: Shocking?

A: Absolutely. And [T.R.'s mother] told me that, "Now, don't discipline her. Don't yell at her. Just be supportive. It's going to happen."

Q: Were other behaviors reported?

A: After that incident, we established that modus operandi in the family that "T.R., we don't want to find out from someone else. Come to us. We can protect you. We can back you up, but don't lie to us.["][16]

. . . .

Q: Did you give your daughter an oral sex video?

A: We did.

Q: Describe the circumstances.

A: It was after that we were made aware that she has already had that kind of an experience. She was also friends with—on base. We lived on base.

Q: Uh-huh.

A: There was a girl that she hung out with . . . [ ] who actually got caught in the teen center----

Q: I understand. But----

A: So the danger was there.

Q: You believed there was a danger?

A: Yes, sir; and her mother and I were very concerned.

Q: Did you believe, based on your experience, education, and any other indices that your daughter might be involved in such behavior?

A: Yes, sir.[17]

---

[16] Record at 625.

[17] *Id.* 647-48.

. . . .

Q: Was this interaction designed to insight [sic] your sexual desire or hers?

A: No, sir.

Q: What was the purpose of making this video available?

A: To protect her from doing something that would harm her. That's my job, to protect her.

Q: And how did seeing an instructional video on oral sex do that, sir?

A: Well, sir, I heard some very bizarre stories in my counseling, and one of her friends actually got into—got barred from a Navy facility for doing something crazy like that.

Q: Can you be more specific about what your intention was in terms of protecting your daughter and how you believed that this act would protect your daughter?

A: That she will know that this is part of human sexuality, it is—it is normal, but it is precious. It's not something that boys can just ask for and you will give it to them and—and she will feel comfortable with it to—to talk about it.

Q: Did you believe that that was effective?

A: She was very surprised to hear when we talked about it that you can actually get STD's with oral sex. She didn't know that.

Q: And that was part of what was portrayed in the film?

A: That was part of it, yes, sir.[18]

Similarly, during cross-examination by the trial counsel, the appellant further discussed learning that T.R. had engaged in oral sex shortly before he allowed her to view the oral sex video:

Q: So when you met T.R., she was not open sexually?

A: Right, correct.

Q: You say you—when T.R. was 14 years old, you had found out she was sexually active?

A: Correct.

---

[18] *Id.* at 649-50.

10

Q: When you found this out, you were floored?

A: Yes.[19]

. . . .

Q: Concerned because it was happening on base, is that right? You were concerned about the location?

A: Yeah.

Q: Because you're an officer?

A: Yes.

Q: Chaplain?

A: Yes.

Q: You have a reputation?

A: Every chaplain has a reputation.

Q: And it was after that that you gave your stepdaughter a video on oral sex?

A: Yes.

Q: This video contained real people having oral sex?

A: Yes.[20]

Finally, having triggered the conditional relevance of T.R.'s prior sexual acts though the appellant's testimony, the defense had opportunities to further examine T.R. regarding the evidence related to the appellant's belief that T.R. was engaging in reckless sexual behavior. The fact that the defense neither recalled her before resting nor cross-examined her as a government rebuttal witness prevents the appellant from properly claiming error now. *See United States v. Shaw*, 71 M.J. 557, 558-60 (A. Ct. Crim. App. 2012) (dismissing the appellant's claim that exclusion of cross-examination testimony violated MIL. R. EVID. 412 and the Confrontation Clause of the Sixth Amendment, because after the witness opened the door in response to a member's question to a line of inquiry prohibited by a previous ruling, the defense "never . . . follow[ed]-up with cross-examination").

Even if the military judge abused her discretion in ruling to exclude this specific evidence in the MIL. R. EVID. 412 motion, no relief is required in the context of this case. The subject evidence was presented to the court-martial members at trial despite the military judge's ruling.

---

[19] *Id.* at 661.

[20] *Id.* at 662-63.

b. Admissibility of prior masturbation evidence litigated before trial

During the MIL. R. EVID. 412 motion session, the civilian trial defense counsel articulated a theory of relevance for evidence that the appellant knew T.R. masturbated in Guam with a hand massager that related to the allegations of the appellant giving T.R. sex toys as gifts:

> "Wait a minute. She's already masturbating. She's already doing this. Why shouldn't I provide her with the means to do something she's already doing and they make a device to do that"? So the fact that he actually saw her use the device, and now so the Government charges he's providing her with [a] different device certainly provides information and insight about masturbation, provides information and insight, "Okay. Probably time for me to do something about this. Let's keep her home. Let's keep her doing what is safe, and I will provide her the means." That's an explanation for why, assuming the Government can demonstrate that he rather than somebody else provided those particular items.[21]

Without further analysis, the military judge concluded that this incident was "wholly private behavior [that was] not *relevant* for any purpose" and therefore inadmissible.[22]

The written ruling properly addressed the burden, standards, and legal analysis framework applicable to each category of T.R.'s alleged prior sexual behavior and predisposition that the defense raised, including the teenaged masturbation. The appellant contends the military judge misapplied the law, in that she "failed to: (1) evaluate whether evidence that [the appellant] knew T[.]R[.] engaged in potentially physically harmful behavior was relevant or material; or (2) evaluate whether [the appellant] had a constitutional right to confront T[.]R[.] about potential reasons for her step-father to be concerned."[23]

As a rule of exclusion, MIL. R. EVID. 412(a) makes evidence of an alleged victim's sexual propensity and evidence offered to prove an alleged victim engaged in other sexual behavior generally inadmissible. *United States v.*

---

[21] *Id.* at 90-91.

[22] AE XXV at 7 (emphasis added). We note that because evidence properly admitted despite MIL. R. EVID. 412's general prohibition must be conjunctively "relevant, material, *and* . . . [have] probative value . . . [which] outweighs the dangers of unfair prejudice," *Ellerbrock*, 70 M.J. at 318, the military judge may validly determine that evidence is inadmissible upon failure to meet any of the requirements.

[23] Appellant's Brief of 19 Jan 2016 at 19.

*Banker*, 60 M.J. 216, 221 (C.A.A.F. 2004). An accused must establish that "the evidence is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice" in order to properly admit it under the MIL. R. EVID. 412(b)(1)(C) constitutionally required exception. *Ellerbrock*, 70 M.J. at 318 (citing *United States v. Gaddis*, 70 M.J. 248, 255 (C.A.A.F. 2011)). Despite the rule's language, our superior court has held that an alleged victim's privacy interest, while relevant for MIL. R. EVID. 412 balancing test purposes, is not the dispositive factor, and that such "interests cannot preclude the admission of evidence 'the exclusion of which would violate the constitutional rights of the accused.'" *Gaddis*, 70 M.J. at 250 (citation omitted); *see also id.* at 254 ("[T]he rule nowhere provides that if the privacy interest is high, [MIL. R. EVID.] 412 turns into a rule of absolute privilege . . . .").

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence and . . . the fact is of consequence in determining the action." MIL. R. EVID. 401. Testimony is material if it is "'of consequence to the determination of appellant's guilt.'" *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citing MIL. R. EVID. 401, Analysis).

Having determined that evidence of T.R.'s prior teenaged masturbation in Guam was not relevant "for any purpose," the military judge did not address whether the evidence was material, and whether its probative value outweighed the unfair prejudice. So we examine the record ourselves in conducting our *de novo* review.

We conclude the evidence that the appellant saw T.R. using a hand massager to masturbate before he gave her a dildo has a direct and substantial link to a material fact at issue—whether or not his gift in 2007, as alleged in the specification under Charge I, was an indecent act or an attempt to address legitimate parental concerns. The hand massager incident T.R. described in her NCIS statement may have established a non-indecent context for the gift. "Because the evidence has a tendency to prove or disprove a substantial issue in question, it is both relevant and material." *Ellerbrock*, 70 M.J. at 321. The conclusion that this evidence was not relevant because it involved "wholly private behavior," reflects application of an incorrect legal principle in light of *Gaddis*, 70 M.J. at 250, and thus was an abuse of discretion. *See Ellis*, 68 M.J. at 344.

Balancing the probative value of the evidence against the dangers of unfair prejudice, including the consideration of prejudice to the victim's legitimate privacy interests, we further find the evidence was highly probative. The masturbation incident was essential to the appellant's

opportunity to put on the defense that the civilian trial defense counsel articulated during the MIL. R. EVID. 412 motion session.

Consequently, exclusion of relevant and material evidence with probative value that outweighed the dangers of unfair prejudice violated the appellant's constitutional rights to cross-examination and to present evidence of a defense. In light of this constitutional error, we test whether "there is a reasonable possibility that the evidence or error complained of might have contributed to the conviction"—that is, "whether it was harmless beyond a reasonable doubt." *Ellerbrock*, 70 M.J. at 320 (citations and internal quotion marks omitted). We are satisfied beyond a reasonable doubt the error was harmless with respect to the court members' finding that the appellant giving T.R. the dildo in 2007 was an indecent act as defined by Article 120, UCMJ.

T.R. testified that in 2007, when she was 14 years old, she received a purple, six-inch dildo from the appellant at their home in Guam while her mother was away. She further testified that he claimed it was from his older daughter, A.R. According to T.R., "[h]e said that [she] could use this to find out what [she] like[d] in the bedroom and to practice."[24] Afterwards, she hid it from her mother in numerous places within her room and never showed it to her mother.

Before the appellant testified, A.R. was a defense witness. On cross-examination, she denied ever sending or mailing T.R. any sexual devices. During his testimony, while maintaining his actions were all done for legitimate parental purposes, the appellant admitted to showing T.R. the oral sex video, to giving her three of the four other alleged sex toy gifts after she turned 16, and to doing all the other alleged actions except one—he completely denied giving T.R. a dildo before she was 16. He explained that when they lived in Guam during 2007, "[s]he was a virgin. I wouldn't do that. I didn't. I didn't want her to lose her virginity to a toy."[25]

The appellant again denied giving T.R. a purple dildo during cross-examination, stating "[s]he was still a virgin in Guam."[26] He also explained that he was referring to the dildo T.R. received during 2009 when he mistakenly told her in a January 2014 pretext phone call that, while he handed her the dildo, it was actually from A.R. He later talked about it with A.R., reviewed his online shopping account, and verified that he and his wife purchased two dildos that they gave T.R in December 2009 and February 2010, as well as vibrating underwear.

---

[24] Record at 422.

[25] *Id.* at 637.

[26] *Id.* at 664.

During the government's case in rebuttal, the Naval Criminal Investigative Service (NCIS) special agent who conducted the pretext phone call testified about T.R. and the appellant's discussion of the purple dildo in Guam during the call. She explained that the appellant told T.R. he recalled the item. When T.R. expressed her doubts that the dildo had really come from A.R., the appellant responded, "'No, no, no, that was—it was—definitely it was from [A.R..]'"[27]

Even if the military judge had not excluded the masturbation incident, the appellant's consistent denial that he gave T.R. a dildo in Guam throughout the NCIS investigation and trial testimony convince us that the court-martial members would not have acquitted the appellant of this indecent liberty with a child offense. The members, like this court, would surely find that the appellant did, in fact, give T.R. the dildo in Guam, when she was 14 years old, under circumstances wholly inconsistent with legitimate parental concerns.

c. Admissibility of prior masturbation evidence not litigated before trial

Beyond the hand-massager masturbation incident, in testifying about the allegation that giving T.R. a vibrator, vibrating underwear, anal balls and a dildo after she was 16 years old was conduct unbecoming an officer and gentleman—Charge II, Specification 3—the appellant explained there were three reasons he and his former wife gave T.R. this vibrator:

> One, she admitted to us that she was using some of the kitchen utensils from Pampered Chef that had kind of girth that— appropriate for her. We were grossed out by that. Second is that [T.R.'s mother] was concerned that T.R. has been using her vibrator. . . . And the third reason was to provide her a safe environment where she can curb her sexual urges and she will not be going out and looking for another boy.[28]

The specific evidence of masturbation that the appellant provided as the first two reasons, and that the military judge addressed in a curative instruction for the members to not consider,[29] was not part of the defense's

---

[27] *Id.* at 716.

[28] *Id.* at 640-41.

[29] *Id.* at 658 ("During the direct examination as conducted by defense counsel of [the appellant], there was testimony elicited that indicated that T.R. had been masturbating utilizing household tools, a vibrator of her mother, and words to that effect. That was impermissible testimony. It was not admissible testimony; and, as such, you are to completely disregard it and cast it out of your minds as if you had never heard it. I will tell you that that testimony is not for your consideration on any matter before this court-martial.").

MIL. R. EVID. 412 motion. While a military judge has the discretion to permit a motion to be filed during trial under MIL. R. EVID. 412(c)(1)(A), in this case the defense never even attempted to address the admissibility of additional prior sexual behaviors beyond those included in the litigated motion before the members received the appellant's testimony about them.[30]

Consequently, the military judge did not abuse her discretion in excluding those portions of the appellant's testimony that violated MIL. R. EVID. 412's procedural requirements for advanced notice and litigation. *See United States v. Brown*, No. NMCCA 9901754, 2005 CCA LEXIS 188, at *9-15 (N-M. Ct. Crim. App. 23 Jun 2005) (upholding the military judge's ruling that "MIL. R. EVID. 412 barred the [appellant's] proffered" cross-examination "testimony" of "prior attempted sexual contact with [the alleged] victim" partially "due to the trial defense counsel's failure to file a written motion at least five days prior" and thereby "failing to provide the required notice under MIL. R. EVID. 412").

d. Admissibility of prior sexual acts with persons other than the appellant

The appellant contends that "[e]xcluding evidence of T[.]R[.]'s prior sexual acts impeded [the appellant] from effectively challenging the Government's evidence because he could not defend against the intent element."[31] However, like the evidence of the oral sex discussed above, this evidence was not actually excluded from the trial testimony.

For example, T.R. testified that her sexual partners included within the journal entries for which the appellant compensated her were real people and were her actual sexual partners. She also admitted, "I wouldn't put it past myself to put a list of my sexual partners in a diary, yes" in response to questions about her personal journal that the appellant found in her room.[32] The appellant also testified to various prior sexual acts by T.R. and that they concerned him. He explained that her behavior and his concerns are why he took the measures with her that resulted in his charges at trial.

So, once again, even if the military judge abused her discretion in the MIL. R. EVID. 412 ruling, no relief is required when that ruling did not actually prevent the appellant from presenting this evidence at trial.

---

[30] *Id.* at 655-56 ("[I]n your motion you provided no such indication of the evidence that you elicited from your client on the stand today, contrary to [MIL. R. EVID.] 412. You gave the Court no notice that there was going to be any testimony elicited regarding the matters of masturbation . . . . I plan to give the members an instruction to completely disregard that testimony . . . .").

[31] Appellant's Brief of 19 Jan 2016 at 22.

[32] Record at 507.

## B. Evidence regarding T.R.'s prior drug use

### 1. Trial proceedings

In a pretrial motion, the trial defense counsel sought production of T.R.'s mental health records under MIL. R. EVID. 513 in order to identify inconsistent statements and conditions impacting T.R.'s competence to testify. The redacted portions of the mental health records that the military judge deemed relevant and released following an *in camera* review noted methamphetamine use by T.R. and her mother. Before trial, T.R. testified about those references. She confirmed monthly methamphetamine use with her mother during mid-2012 through August 2013, and that she had also used cocaine and marijuana on various occasions during her high school years. The trial defense counsel's only follow-up to the military judge's examination was about T.R.'s preferred method of methamphetamine use.

Just before opening statements, the trial counsel moved to exclude evidence of T.R.'s methamphetamine use, arguing that such evidence was irrelevant, unduly prejudicial, and confusing to the members. The trial defense counsel argued the evidence was admissible based upon its relevance regarding T.R.'s potentially impaired perception, competency, and memory as a witness. In an Article 39(a), UCMJ, session following T.R.'s direct examination, T.R. testified outside of the members' presence that she had not used any methamphetamine between the time she met with the mental healthcare provider and when she met with NCIS officials in November 2013. She further testified that she had not been under the influence of any illicit drugs anytime since her November 2013 meeting with NCIS. The trial defense counsel noted that a therapist diagnosed T.R. as having amphetamine dependence on 21 October 2013. The military judge further noted that during "subsequent visits" the treating psychologist indicated that T.R.'s thoughts were "clear and linear" and found "no indication that [T.R.] has any other psychological problems."[33]

After considering a defense expert's affidavit regarding the potential impacts of methamphetamine use, evidence that T.R. was not using any drugs around the time of reporting allegations to NCIS, and the lack of evidence that T.R. suffered from any cognitive impairment, the military judge concluded evidence of T.R's drug use was irrelevant. She further concluded, "even if it was minimally relevant, under [MIL. R. EVID.] 403 this is just a smear campaign. [The defense] want[s] to show that [T.R.]'s a drug user. I won't allow the testimony."[34] The military judge also determined there was no "material inconsistency" between T.R.'s Article 32, UCMJ, testimony

---

[33] *Id.* at 470.

[34] *Id.*

about drug use during an earlier, specific time frame and the subsequent methamphetamine use.[35]

### 2. Alleged abuse of discretion

The appellant argues the military judge abused her discretion when she excluded evidence of T.R.'s drug use and thereby denied him the fundamental rights to confront and cross-examine T.R. Specifically, he claims this ruling "prevented the defense from attacking T[.]R[.]'s allegations against [him] and exploring her motive to fabricate or embellish the nature of the charges."[36]

Again, we review the military judge's ruling to exclude this evidence for an abuse of discretion. *Roberts*, 69 M.J. at 26. To constitute an abuse of discretion, the challenged ruling must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Travers*, 25 M.J. 61, 62-63 (C.M.A. 1987) (citations and internal quotation marks omitted). We review findings of fact under a clearly erroneous standard and conclusions of law *de novo. United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011). An appellant's Sixth Amendment rights are violated when a "reasonable jury might have received a significantly different impression of [a witness'] credibility had [the trial defense counsel] been permitted to pursue his proposed line of cross-examination." *United States v. Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

The trial defense counsel argued T.R.'s drug use was relevant to challenge her memory association and perception, impeach her credibility, and reveal a motive to fabricate—to "protect[] mom from potential redress I guess for her [drug] use."[37]

We do not find the military judge's decision "outside the range of choices reasonably arising from the applicable facts and the law." *Miller*, 66 M.J. at 307; *see United States v. Weeks*, 17 M.J. 613, 614-15, (N.M.C.M.R. 1983) (per curiam), *rev'd on other grounds*, 20 M.J. 22 (C.M.A. 1985) (upholding the military judge's decision to preclude the appellant from cross-examining a witness on "incidents of past drug usage or sale" because they "do not necessarily demonstrate" either "character for truthfulness" or "motive or bias . . . under [MIL. R. EVID.] 608(c)," unless there are "unique circumstances" producing "a recognizable motive to" testify falsely) (internal quotation omitted).

---

[35] *Id.* at 471.

[36] Appellant's Brief of 19 Jan 2016 at 9.

[37] Record at 370.

### III. CONCLUSION

The findings and sentence as approved by the convening authority are affirmed.

Chief Judge PALMER and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court