Judge STUCKY delivered the ¿pinion of the Court.
The Judge Advocate General of the Air Force certified an issue to this Court under Article 67(a)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(2) (2000), asking whether a military judge abused his discretion in granting a motion to suppress all evidence resulting from Appellee’s urinalysis. We find that the military judge did not abuse his discretion in suppressing the urinalysis results.[1]
*307 i.
Senior Master Sergeant (SMSgt) Van Lin-gen was assigned as the Drug Demand Reduction Program Manager and the Drug Testing Program Administrative Manager at Westover Air Reserve Base, Massachusetts, an Air Force Reserve installation. As part of the installation drug testing program run with the tacit approval of the installation commander, SMSgt Van Lingen used a computer program to generate a random list of names of individuals to be tested. It also produced the notification letters provided to personnel selected for testing.
Appellee was a reservist who was serving an extended active duty tour. SMSgt Van Lingen’s computer program randomly selected Appellee to provide a urine specimen for drug testing. Major Ryan, an Air Reserve Technician (ART), signed the letter notifying Appellee of the requirement to provide a urine specimen for testing.
ARTs are full-time civilian employees of the Air Force who are also members of the Air Force Reserve unit by which they are employed in their civilian capacity. Dep’t of the Air Force, Instr. 36-108, Air Reserve Technician (ART) Program, Attachment 1 (July 26, 1994). In his civilian capacity, Major Ryan wore his military uniform and served as the assistant mission support officer. When serving on active duty, he was assigned as the mission support group vice commander. Major Ryan was serving in his civilian, not his military, capacity when he signed the letter notifying Appellee that he was required to provide a urine specimen.
Appellee had not been suspected of using drugs before his positive urinalysis test. Once he tested positive for cocaine, however, agents from the Air Force Office of Special Investigations called Appellee into their office for questioning. In response to their questions, Appellee admitted to using cocaine on about four occasions since he was ordered onto active duty status.
At trial, Appellee moved to suppress his confession and the results of his urinalysis test. He argued that the test was the product of an unlawful order issued by a civilian ART who did not have command authority to issue the order and that the confession was the fruit of the unlawful urinalysis. The Government opposed the motion, arguing the order was lawful and a product of the installation commander’s random urinalysis program. The military judge heard evidence and ruled that the testing of Appellee’s urine was based on an unlawful order and was thus not incident to command. He suppressed the urinalysis results as an unlawful search and the confession as fruit of that search.
The Government gave proper notice and appealed to the United States Air Force Court of Criminal Appeals under Article 62, UCMJ, 10 U.S.C. § 862 (2000). The Court of Criminal Appeals affirmed the military judge’s rulings. United States v. Miller, Misc. Dkt. No.2007-02, 2007 CCA LEXIS 252, at *8, 2007 WL 2050646, at *4 (A.F.Ct. Crim.App. June 26, 2007) (unpublished). The Air Force Judge Advocate General certified the issue to this Court for consideration.
II.
We review a military judge’s decision to suppress or admit evidence for an abuse of discretion. United States v. Beckett, 49 M.J. 354, 356-57 (C.A.A.F.1998); United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F.1995). A military judge abuses his discretion when his findings of fact are clearly erroneous, the court’s decision is influenced by an erroneous view of the law, or the military judge’s decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. See United States v. Gore, 60 M.J. 178, 187 (C.A.A.F.2004) (citing United States v. Wallace, 964 F.2d 1214,1217 n. 3 (D.C.Cir.1992); United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F.1995)).
Evidence obtained from a military inspection is admissible at trial when relevant and not otherwise inadmissible under the Military Rules of Evidence. Military Rule of Evidence (M.R.E.) 313(a).
An “inspection” is an examination of the whole or part of a unit, organization, instal *308 lation, vessel, aircraft, or vehicle, including an examination conducted at entrance and exit points, conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle____ An order to produce bodily fluids, such as urine, is permissible in accordance with this rule.
M.R.E. 313(b) (emphasis added).
The authority to order an inspection under M.R.E. 313 is directly tied to a commander’s inherent authority; it is the connection with command authority, and the commander’s responsibility to ensure fitness of a unit, that keeps a valid inspection scheme within constitutional parameters. United States v. Bickel, 30 M. J. 277, 280, 282 (C.M.A.1990). This tie, or connection, between the inspection and command authority is important in justifying the reasonableness of what is otherwise a warrantless search. Id. at 285-86.
Air Force installation commanders are tasked with ensuring that the service’s drug testing program is conducted in accordance with all applicable directives. Dep’t of the Air Force, Instr. 44-120, Drug Abuse Testing Program (July 1, 2000) [hereinafter AFI 44-120], Unit commanders are responsible for directing that drug tests be conducted. Id. para. 4.7.6.I. A unit is a “military organization constituted by directives issued by [¶] USAF.” Dep’t of the Air Force, Instr. 38-101, Air Force Organization para. 2.1.2. (Apr. 4, 2006) [hereinafter AFI 38-101]. Thus, we recognize that the term “unit commander” is not limited to an individual’s immediate commander, but also includes higher-level commanders in the chain of command.
As discussed earlier, a valid inspection is conducted as an incident of command. But the Government failed to establish that any commander in Appellee’s chain of command at the installation directed that a test be conducted. Although SMSgt Lingen testified that he ran the installation-wide urinalysis program on behalf of the installation commander, the Government failed to prove the existence of any local policy letter, directive, or other instruction to establish that West-over Air Reserve Base had such a program.[2] We recognize that a commander can establish a drug testing program such that random selection by the computer program equates to a direction to test. There is, however, no evidence such was the case at Westover Air Reserve Base. At the time he signed the letter directing Appellee to provide a urine specimen, Major Ryan was in civilian status and, therefore, not able to act as a commander. AFI 38-101 para. 2.1.2.1.1; Op. JAGAF 1993/19, 5 Civ. Law Ops. 233, 234 (Feb. 22,1993). Under these facts, there is nothing that connects the letter directing Appellee to test with a legitimate exercise of command authority. Thus Appellee’s urinalysis test was not an incident of command and did not comply with M.R.E. 313. Operating an inspection program on “auto-pilot,” without command input, as was done here, neither constitutes a legitimate order to test nor satisfies the requirements of M.R.E. 313.
III.
Under these circumstances, we affirm the decision of the United States Air Force Court of Criminal Appeals and sustain the military judge’s suppression of Appellee’s urinalysis and the resulting confession.

. Appellee’s motion to attach documents in support of a motion to dismiss is granted. Appellee’s motion to strike Appellant’s opposition to Appellee's motion to dismiss is denied, and Appellee’s motion to dismiss for lack of jurisdiction is denied. See United States v. Lopez de Victoria, 66 M.J. 67, 71 (C.A.A.F.2008).

. The dissent would find that an Aerospace Medicine Operating Instruction, promulgated by the order of the 439th Aerospace Medical Squadron Commander, constitutes an exercise of the installation commander’s inherent command authority to inspect members assigned to the installation. However, there is no evidence the installation commander delegated his responsibilities under AFI 44-120 to the Aerospace Medical Squadron Commander, nor is there evidence the Aerospace Medical Squadron Commander was in Appellee’s chain of command for the purposes of M.R.E. 313 inspections.