# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant DAVID R. MCHUGH**
**United States Army, Appellant**

ARMY 20160647

Headquarters, Eighth Army
Christopher Fredrikson and Tiernan P. Dolan, Military Judges
Colonel Craig A. Meredith, Staff Judge Advocate (pretrial)
Colonel E. Edmond Bowen, Jr., Staff Judge Advocate (post-trial)

For Appellant:  Major Brendan R. Cronin, JA; Captain Patrick G. Hoffman, JA (on brief).

For Appellee:  No response filed.[1]

25 September 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of dereliction of duty, two specifications of rape, two specifications of assault, one specification of adultery, and one specification of conduct prejudicial to good order and discipline by having a subordinate perform guard force duty for him, in violation of Articles 92, 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, 928, 934 (2012)

---

[1] On 4 April 2018, the government filed a motion for an extension out of time to file a brief, explaining that through an administrative error this case was not included in a previous consolidated motion for extension.  We granted the government an extension until 25 May 2018.  It would seem if an extension was that necessary in the first instance, the government would have shared its thoughts on this case by that deadline.

[UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for five years, total forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. On appeal, appellant asserts that the military judge abused his discretion in denying the defense request for an expert witness to explain intimate partner violence. We disagree and find no abuse of discretion by the military judge.[2, 3]

## BACKGROUND

### *Appellant's Relationship with Seaman NR*

Appellant was a married, non-commissioned officer (NCO) serving an unaccompanied tour in Korea. In July 2015, he met Seaman (E-3) (SN) NR on Tinder. This started an active, consensual sexual relationship between them that lasted over two months. Seaman NR explained and appellant understood that their sexual relationship had several limitations. First and foremost, was consent. Second, she did not want to get physically assaulted by appellant. Third, she did not want appellant to be sexually active with anyone else.

Appellant sexually and physically violated SN NR by raping her twice, choking her, and striking her in the face. He raped SN NR by penetrating her anus with his penis. On other occasions, appellant unlawfully choked and struck SN NR in the face with his hand.

In late September, appellant texted SN NR that he had a sexual relationship with a woman he met on Tinder. Seaman NR got upset and explained that she did not want to have a relationship with appellant. In October 2015, SN NR filed a

---

[2] Appellant also asserts he should receive meaningful relief for dilatory post-trial processing of his case. The government took 223 days to process the 1,093 page record of trial. The staff judge advocate (SJA), in the addendum to the SJA recommendation, agreed and recommended the convening authority grant the appellant thirty days of "clemency" due to this unexplained delay. However, as explained by the SJA, the convening authority could not grant relief under Article 60, UCMJ. We do not find a due process violation in, or determine appellant suffered prejudice as a result of, this delay. However, we find providing a one-month sentence reduction as recommended by the SJA is consistent with our review of the appropriateness of the sentence. We grant this relief in our decretal paragraph.

[3] We have considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

2

restricted report about appellant's sexual assaults. In November, SN NR was going on leave, got in trouble for underage drinking, and changed the report of the rapes to unrestricted. She hated her assignment in Korea and wanted to be reassigned to Naples or San Diego.

Subsequent to the unrestricted report, the Army Criminal Investigation Command (CID) began an investigation. During an interview with a CID Agent, appellant explained that almost all the sexual acts he engaged in with SN NR were consensual. However, appellant admitted that during the first rape in August 2015, he knew SN NR did not consent, that it was painful since he did not use lubricant, and she screamed "no" and "stop." He explained that although he knew it was wrong, he kept going since he wanted to ejaculate in her anus. Describing the second rape in September 2015, appellant explained he was rougher, raped her longer, and held her down in a manner similar to "a football stance." He knew she did not consent, she told him that it hurt, and she screamed for him to stop. Instead, he continued until he ejaculated. Again, he knew he was wrong.

*Motion Hearing on Defense Request for an Expert*

During the investigation, CID obtained several hundred pages of texts from SN NR. These included hundreds of texts exchanged between appellant and SN NR that captured their sexual attraction to each other and their sexual activities. In addition, although they saw each other often, the texts showed that SN NR also regularly participated in social activities without the appellant. The content and interpretation of these texts and how they related to appellant's and SN NR's relationship was the basis for the defense's request to the convening authority for an expert witness, Dr. Mindy Mechanic, a clinical forensic psychologist, to testify in the areas of intimate partner and sexual violence. The convening authority denied defense counsel's request.

At trial, defense counsel submitted a motion to compel production of Dr. Mechanic as an expert witness at trial. For purposes of the defense motion, Dr. Mechanic testified telephonically. The parties stipulated that the expert was qualified in the area of "intimate partner violence."[4] The substance of her testimony, based on a review of the texts between appellant and SN NR and SN NR's apparent ability to socialize with others, was that the relationship did not exhibit the types of control present in cases of intimate partner violence.

As Dr. Mechanic explained, intimate partner violence focuses on abuse or violence that occurs in romantic or intimate relationships. Doctor Mechanic testified that more extreme forms of violence could indicate "intimate terrorism."

---

[4] The expert explained that intimate partner violence is a more recent and focused term used to describe domestic violence.

Intimate terrorism is different since the "goal or motivation of the abuser is to have control over their partner, to have control over all different aspects of their partner's life." Therefore, the abusive acts, whether they are sexual, physical, emotional, or stalking all function to initiate, maintain, or reinstate control of the abused person by the abuser.

Defense counsel provided Dr. Mechanic a summary of the charged misconduct. According to the expert, the behavior charged would be categorized as intimate partner violence or intimate terrorism. The defense counsel also provided the expert various hypotheticals and examples of the text messages exchanged between the appellant and SN NR. In one of the text messages SN NR stated she was going to dinner with friends and appellant informed her that he did not want to take up all her time, acknowledged he could not "hold" her all to himself, and encouraged her to have fun with her friends.[5] The expert testified that everything about the text message was surprising to her since the alleged abuser was not exhibiting control.

After being read other text messages where appellant encouraged SN NR to socialize with others, "do her own thing," and not spend time with appellant, Doctor Mechanic concluded that the texts were not consistent with intimate partner terrorism and, that in her twenty years of experience, she had never seen similar texts in substantiated allegations of intimate partner violence. In Dr. Mechanic's expert opinion, she had never seen a "scenario" that matched the charged misconduct and the lack of control exhibited in the texts. She explained the charges and texts were inconsistent and "completely incongruent," and concluded that "something was not right about the situation, something wasn't accurate."

On cross-examination, the Dr. Mechanic testified that there are ranges or spectrums of abuse and control could be physical. She explained that victims of intimate partner terrorism were generally in long-term relationships with severe abuse. She acknowledged she had not examined the appellant.

In response to questions from the military judge, Dr. Mechanic testified that she could not conclude based upon the charges alone, without more information, whether the allegations were more consistent with intimate terrorism.

During argument on the motion, defense counsel explained the expert testimony was relevant to the issue of guilt of the offenses and how the government charged appellant. According to the defense counsel, the expert would explain that the charges were more consistent with intimate partner terrorism than with "common couple violence" and would support the defense theory that SN NR was fabricating

---

[5] Although this specific text "hypothetical" was read to the expert, there are other texts where appellant encouraged SN NR to socialize with co-workers and friends.

the allegations. That is, since intimate partner violence involves certain dynamics, such as control over the victim, and the text messages did not reflect these dynamics, SN NR must be fabricating the allegations. The defense explained that the expert could explain that appellant did not control SN NR and the text messages were "completely shocking" to the expert, at least in the context of intimate partner violence. Defense counsel acknowledged that the expert could not say that SN NR's text messages were shocking in light of the allegations. In response to the military judge's question about whether the defense was trying to introduce a "reverse profile defense" or lack of propensity evidence, the defense counsel stated they were not trying to introduce that type of character evidence.

The defense counsel and government counsel agreed that no expert, based on the facts of the case, would testify that the situation between appellant and SN NR involved domestic terrorism. Further, the government explained they were not presenting propensity evidence, not arguing that appellant engaged in intimate partner violence or terrorism, and not calling any expert to testify about counter-intuitive behavior by a victim.

After the hearing the military judge issued a written ruling denying defense counsel's motion to compel. Appling Military Rule of Evidence [Mil. R. Evid.] 702, Rule for Court-Martial [R.C.M.] 703(d), and our superior court's cases, the military judge concluded:

> The defense has not demonstrated that the proffered expert testimony regarding intimate partner violence is relevant. Both parties agree that the relationship between the accused and the alleged victim does not constitute intimate partner violence. The Government has assured this Court that it will not present any evidence regarding intimate partner violence. The defense simply wants to use intimate partner violence as a strawman, arguing that, other than the alleged violence, the alleged victim's relationship with the accused is inconsistent with intimate partner violence.

The military judge, who was also trier of fact in this case, explained that even assuming the testimony was relevant, it was not necessary.[6]

---

[6] The military judge concluded that "because of the circular nature of the Defense's application of the testimony to the proffered facts in this case, the testimony would not be helpful" and "would lead to confusion of the issues." As such, the military judge would have also excluded the testimony under Min R. Evid 403.

**LAW AND DISCUSSION**

At trial, defense counsel styled the request for Dr. Mechanic as a motion to compel an expert witness, which the military judge ultimately denied on the basis that the Dr. Mechanic's testimony was neither relevant nor necessary. On appeal, appellant argues the military judge abused his discretion under Mil. R. Evid. 401 in determining the testimony was not necessary and under Mil. R. Evid. 403 in finding the testimony would confuse the issues at trial. We disagree.

We review a military judge's decision regarding the admissibility of expert testimony pursuant to Mil. R. Evid. 702 for an abuse of discretion. *United States v. Griffin*, 50 M.J. 278, 284 (C.A.A.F. 1999). The abuse of discretion standard requires more "than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99) (C.A.A.F. 2010). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Flescher*, 73 M.J. 303, 311 (C.A.A.F. 2014) (quoting *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008)). Put another way, "[a]n 'abuse of discretion' exists where 'reasons or rulings of the' military judge are 'clearly untenable and . . . deprive a party of a substantial right such as to amount to a denial of justice'; it 'does not imply an improper motive, willful purpose or intentional wrong.'" *Id.* (citing *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987).

If, as here, a defense request for an expert witness is denied by a convening authority, "it may be reviewed before the military judge who shall determine whether the testimony of the expert is relevant and necessary, and, if so, whether the Government has provided or will provide an adequate substitute." R.C.M. 703(d).

Military Rule of Evidence 702 provides that an expert witness may provide testimony if it "will assist the trier of fact to understand the evidence or determine a fact in issue." "Necessary" does not equate to indispensable in this context. "[T]he test is not whether the jury could reach some conclusion in the absence of the expert evidence, but whether the jury is qualified without such testimony 'to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject. . . .'"[7] *United States v. Houser*, 36 M.J. 392, 398 (C.M.A. 1993) (citations omitted). "A suggested 'test' for deciding 'when experts may be used' is 'whether the untrained layman would be qualified to determine intelligently and to the best possible degree

---

[7] The motion to compel Dr. Mechanic was litigated before appellant elected to be tried be a military judge.

the particular issue without enlightenment from those having a specialized understanding of the subject . . . .'" *Flesher*, 73 M.J. at 313 (citing *United States v. Meeks*, 35 M.J. 64, 68 (C.M.A. 1992) (quoting Fed. R. Evid. 702 advisory committee's note)).

The question faced in this case by the military judge boiled down to whether the expert's testimony was necessary and relevant to the fact finder in determining matters in issue. *Flesher*. 75 M.J. 313. This required appellant to demonstrate, among other things: Dr. Mechanic's qualifications and the subject matter of her testimony; the basis of her expert opinion; and the legal relevance and probative value of her testimony. *See United States v. Billings*, 61 M.J. 163, 166 (C.A.A.F. 2005) (citing *Houser*, 36 M.J. at 397). We need only address here the relevance and probative value of Dr. Mechanic's testimony.[8]

We concur with the military judge that Dr. Mechanic's testimony, as proffered by defense counsel, was not relevant. Appellant argues that Dr. Mechanic's testimony was analogous to a "counterintuitive behavior expert" often used by the government in sexual assault cases to explain why a victim may not have acted act in a particular manner following an assault. Our superior court has recognized the admissibility of such testimony. *See e.g. Flesher*, 73 M.J. at 313 ("[E]xpert testimony about the sometimes counterintuitive behaviors of sexual assault or sexual abuse victims is allowed because it 'assists jurors in disabusing themselves of widely held misconceptions.'") (quoting *Houser*, 36 M.J. at 398).

We also concur with the military judge that Dr. Mechanic's testimony, as proffered by defense counsel, was not necessary. Appellant was not prevented from presenting a defense guaranteed by the Fifth and Sixth Amendments. *United States v. Ndanyi*, 45 M.J. 315, 321 (C.A.A.F. 1996) Even without an expert, the defense was able to present and argue at trial that there were many inconsistencies in SN NR's texts and her confused relationship with appellant. Seaman NR admitted she was physically attracted to appellant, engaged in consensual sexual activity even after the first rape and the physical assaults, and was conflicted about getting him in trouble even after she filed the restricted report. However, defense counsel sought to go beyond describing the phenomenon of intimate partner terrorism or violence.[9]

---

[8] The record amply demonstrates Dr. Mechanic's expertise in the field of intimate partner violence.

[9] Appellant, in part, asserts the military judge erred in concluding the defense intended to call Dr. Mechanic as a rebuttal witness. We do not share that interpretation of the proffered evidence. It is clear to us upon review of the motion

(continued . . .)

Defense counsel sought to use the expert, and intimate partner violence, as a strawman to ultimately comment on SN NR's credibility. Specifically, defense counsel sought to have Dr. Mechanic testify that the nature of the text messages between SN NR and appellant did not display the level of control associated with intimate partner terrorism.[10] The expert would have testified that the text messages were inconsistent, shocking, and a "bizarre aberration" with the charged misconduct or intimate partner violence.[11] According to the defense counsel, the allegations described "a form of intimate partner violence that has never been heard of"[12] and supported their theory of fabrication. Of course, defense counsel wanted to present this testimony in a setting where the expert did not have all of the facts surrounding appellant's and SN NR's relationship, had not examined appellant or SN NR, and was presented hypothetical questions based on limited text messages and the nature of the charges as drafted.

Even assuming Dr. Mechanic's testimony was relevant, we find the military judge did not abuse his discretion in applying Mil. R. Evid. 403 and finding the testimony would not be helpful. Frankly, we agree with the military judge that some of the testimony of the expert and arguments in support of the expert were circular and confusing. Also, as noted above, the expert's testimony, as presented by defense counsel and based upon limited facts, did not serve to aid the fact finder in determining the ultimate issue in the case. Rather, the testimony served to make the

---

(continued . . .)

hearing that the military judge understood that the defense did not just intend to call the expert in rebuttal to a government expert. The military judge's questions about the government's intentions, if any, to call an expert were directed at trying to understand the defense's arguments of relevance and necessity of Dr. Mechanic's testimony. The military judge fully understood the expert's discussion of intimate partner violence and terrorism.

[10] Although appellant did not exhibit control in SN NR's social activities or control her schedule, appellant controlled SN NR physically and emotionally in other ways. This was demonstrated in his demeaning texts and language to SN NR and the nature of the sexual and physical assaults perpetrated against her.

[11] We also note Dr. Mechanic's testimony bordered on prohibited "human lie detector" evidence. *See United States v. Cacy*, 43 M.J. 214, 217 (C.A.A.F. 1995) ("However, an expert may not testify regarding the credibility or believability of a victim . . . .") (quoting *U.S. v. Suarez*, 35 M.J. 374, 376 (C.M.A. 1992).

[12] While exploring the issue of relevance, the military judge questioned the relevance if the opposite was true and multiple people made similar allegations under the same circumstances.

case about a debate on intimate partner violence or terrorism, not a decision on the relative credibility of the witnesses and other evidence.

The military judge did not abuse his discretion in denying the defense request for expert assistance in the area of intimate partner violence.

**CONCLUSION**

The findings of guilty are AFFIRMED. After considering the entire record, only so much of the sentence as provides for a dishonorable discharge, confinement for four years and eleven months, total forfeiture of all pay and allowances, and reduction to the grade of E-1 is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court