*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Jerry R. WHITE, Aviation Electrician's Mate First Class
United States Navy, Appellant

**No. 20-0231**
Crim. App. No. 201900221

Argued September 29, 2020—Decided November 9, 2020

Military Judges: Jonathan T. Stephens (arraignment) and
Aaron C. Rugh (motions).

For Appellant: *Major Mary Claire Finnen*, USMC (argued).

For Appellee: *Lieutenant Joshua C. Fiveson*, JAGC, USN
(argued); *Lieutenant Colonel Nicholas L. Gannon*, USMC,
*Major Clayton L. Wiggins*, USMC, and *Brian K. Keller*, Esq.

Judge MAGGS delivered the opinion of the Court, in
which Chief Judge STUCKY, Judges OHLSON and
SPARKS, and Senior Judge EFFRON, joined.

———————

Judge MAGGS delivered the opinion of the Court.

This interlocutory appeal comes to us from a general
court-martial at which Appellant is charged with three speci-
fications of possessing child pornography in violation of Arti-
cle 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C.
§ 934 (2012). Before trial, Appellant moved for an order in
limine suppressing all evidence that the Government had
found in Appellant's home pursuant to a command authoriza-
tion for search and seizure (CASS). The military judge
granted the motion, holding that the evidence in question was
inadmissible under Military Rule of Evidence (M.R.E.) 311(a)
because the commander who issued the CASS did so without
probable cause to believe that contraband or evidence of a
crime would be found in the places to be searched. The mili-
tary judge further concluded that the good faith exception in
M.R.E. 311(c)(3) did not apply.

The Government appealed the military judge's ruling pursuant to Article 62(a)(1)(B), UCMJ, 10 U.S.C. § 862(a)(1)(B) (2018), which authorizes an interlocutory appeal by the Government when a ruling excludes evidence that would provide substantial proof of material facts. The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) agreed with the military judge that the CASS was issued without probable cause but concluded that the good faith exception in M.R.E. 311(c)(3) applied and that this exception prevented exclusion of the evidence. *United States v. White*, No. NMCCA, 201900221, 2020 CCA LEXIS 68, at *2, 2020 WL 1174477, at *1 (N-M. Ct. Crim. App. Mar. 11, 2020). We granted Appellant's petition for review under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2018).[1] We now reverse the decision of the NMCCA and affirm the military judge's ruling suppressing the evidence.

## I. Background

Special Agent Mark Garhart of the Naval Criminal Investigative Service (NCIS) prepared a proposed CASS that would authorize government agents to search Appellant's home, person, and vehicle for evidence of "child pornography and child sexual exploitation" and to seize "Electronic Media Storage Devices" and other specified materials. To justify the proposed CASS, Special Agent Garhart prepared a thirteen-page affidavit. In this affidavit, Special Agent Garhart explained that Homeland Security Investigations (HSI) had identified Appellant as a person of interest after linking him to a suspected producer of child pornography named Christopher Villanueva. Special Agent Garhart related that HSI previously had established Villanueva as a point of contact for live streaming sex shows involving juveniles in the Philippines. He further described how Villanueva had directed an HSI undercover agent to make payments for the sex shows to "Jusan N[oriega]." Appellant was connected to Villanueva, according to Special Agent Garhart, because records of the XOOM

---

[1] The assigned issue is: "Did the lower court err in determining the good faith exception applied when the military judge found so little indicia of probable cause existed that no reasonably well-trained officer would rely on the search authorization?"

money transfer system[2] showed that someone with an email address apparently belonging to Appellant, and a home address linked to Appellant's previous duty station, had also attempted to use XOOM to send $10 to Jusan Noriega.

Special Agent Garhart further asserted in his affidavit that Appellant owned a cell phone number connected with a Japanese telephone company and that Appellant's payment had been made from an internet protocol (IP) address registered to a Japanese firm connected to the same Japanese telephone company. In addition, Special Agent Garhart explained that other records showed that Appellant had sent 167 money transfers to the Philippines, of which 102 were sent to accounts located in Taguig City. These transactions took place between ten months and nearly five years before the March 2017 CASS, and the payment to Noriega predated the CASS by twenty-two months. Special Agent Garhart stated that Taguig City was the base of operations for Villanueva and other suspected child exploiters. Special Agent Garhart also asserted that, based on his experience and training in the area, child sex offenders "rarely, if ever, dispose of their sexually explicit material."

Special Agent Garhart sent the proposed CASS and affidavit to Captain John Bushey, the commanding officer (CO) of Naval Air Facility, Atsugi, where Appellant was stationed. He also sent a copy of these documents to Lieutenant Commander Andre Giddens, who was Captain Bushey's staff judge advocate. Captain Bushey subsequently met with Special Agent Garhart. The record does not reveal any additional information that Special Agent Garhart presented to Captain Bushey at their meeting. Special Agent Garhart testified, both at a preliminary hearing under Article 32, UCMJ, 10 U.S.C. § 832 (2012), and at a hearing on the motion in limine, that he briefed Captain Bushey but could not remember the

---

[2] Neither the affidavit nor anything else in the record provides a detailed description of XOOM, but we assume from context that XOOM is an electronic funds transfer provider that allows consumers to send money abroad. *See also* XOOM, https://www.xoom.com/about (last visited Nov. 5, 2020).

details of what he and Captain Bushey had discussed.[3] Special Agent Garhart also could not remember if Lieutenant Commander Giddens was present when he spoke to Captain Bushey about the search authorization. But Special Agent Garhart added: "[I]t'd be surprising . . . if Lieutenant Commander Giddens wasn't in there, but I know at the very least he reviewed [the proposed CASS and affidavit] and had gone over it with Captain Bushey prior to my arrival." Special Agent Garhart did not explain the foundation for his knowledge that Lieutenant Commander Giddens had reviewed the documents. As to the substance of any advice that Lieutenant Commander Giddens may have provided Captain Bushey, Special Agent Garhart testified: "I can't remember asking the SJA [staff judge advocate] if . . . he reviewed it." He further testified: "[T]hat would be a question for Captain [Bushey]. I can't testify to that. . . . [T]hat's not a question I would ask him." The Government called neither Captain Bushey nor Lieutenant Commander Giddens to testify at the suppression hearing.

Captain Bushey signed the proposed CASS. During a subsequent search of Appellant's home pursuant to the CASS, NCIS investigators seized nine electronic devices suspected of containing child pornography. Based on materials found on three of these devices, Appellant was charged with three specifications of possession of child pornography in violation of Article 134, UCMJ. In his subsequent motion in limine, Appellant asked the military judge to suppress the materials seized from his home on the ground that Captain Bushey lacked probable cause to issue the CASS.

Following a hearing on the motion in limine, the military judge ruled that Captain Bushey did not have probable cause to issue the search warrant. The military judge determined that Special Agent Garhart's affidavit contained only three relevant assertions:

---

[3] Appellant attached Special Agent Garhart's testimony at the preliminary hearing under Article 32, UCMJ, as an enclosure to his motion in limine. The Government expressly waived any objection to the military judge's consideration of this testimony.

1. That between May 2012 and May 2016, the accused effected 189 wire or electronic transfer transactions totaling almost $5,500.00 with unknown persons located in the Philippines, including in Taguig City, Philippines;

2. That Taguig City is widely known to harbor persons who engage in child exploitation and child sex trafficking; and

3. That in May 2015, the accused electronically sent $10 to an alias of, or associate of, a person subsequently arrested for child sexual exploitation in the Philippines.

The military judge further found that there was no evidence concerning the following questions about whether Appellant might have saved and stored child pornography obtained from the Philippines:

· At the time, was it technologically possible to record and preserve live-streamed presentations in a digital format?

· If someone watched a live-streamed presentation, was it possible to find forensic digital evidence of that conduct on a person's computer afterwards, even years later?

· Was it a common practice for sex traffickers in the Philippines, or elsewhere, to create digital images or videos to share with others?

· Did Villanueva ever record his shows?

· Did he ever deliver, electronically or through the mail, those previously recorded shows to other clients in a manner that might be saved and electronically stored by those clients?

· Did Villanueva or Noriega create, or communicate with, online communities of persons who collected child pornography?

· Was any person who communicated with or wired money to Villanueva or Noriega ever sent digital images or videos of children?

· Were digital images or videos of Villanueva's victims ever discovered as part of other cases or in the possession of other suspects?

5

&bull; As to Taguig City's reputation regarding sex traf-
ficking, did this reputation extend to the produc-
tion and distribution of child pornography?

&bull; Was it usual for someone who sent money to per-
sons in Taguig City to receive child pornography in
return?

&bull; If so, what was the nature of this exchange, in that,
did it include the electronic exchange of digital im-
ages or videos or access to websites whether in-
volving contraband or not?

Footnote omitted.

The military judge concluded that, in the absence of any
of this additional information, "the sum of [the three relevant]
assertions fails to establish probable cause that evidence of
possession of child pornography or child exploitation would be
located in the accused's home." The military judge further
concluded that the good faith exception did not apply because
"the search authorization was based on an affidavit 'so
lacking in indicia of probable cause as to render official belief
in its existence entirely unreasonable.' [*United States v.*]
*Carter*, 54 M.J. [414,] 419–20 [(C.A.A.F. 2001)]." The military
judge reasoned: "While agents operating in good faith may not
always discern the legal threshold for probable cause with the
same authority as the courts, still warrants and
authorizations must be rooted in *some* evidence from which a
critical eye might perceive probable cause exists." The
military judge concluded that the evidence was lacking in this
case, asserting:

At every step in the chain—the point of alleged
production, solicitation by the accused, delivery to
the accused, and storage by the accused in his
home—the affidavit failed to provide information
sufficient to establish a nexus between the crimes
alleged—receipt and possession of child
pornography and child exploitation—and the place
to be searched—the accused's home and electronic
devices.

The NMCCA vacated the military judge's order. Although
the NMCCA agreed with the military judge's conclusion that
Captain Bushey did not have probable cause to issue the
CASS, the NMCCA decided that the good faith exception in

M.R.E. 311(c)(3) applied. *White*, 2020 CCA LEXIS 68, at \*2, 2020 WL 1174477, at \*1. The NMCCA reasoned:

> While we conclude [Special Agent] Garhart could have, and should have, done more investigating, he nevertheless did have a quantum of information sufficient to believe the CO would not hesitate to sign the search authorization. He also specifically provided this information to the CO and his SJA to seek legal advice prior to obtaining the CASS. Based on the information he had and the actions he took, [Special Agent] Garhart had a substantial basis to believe the CASS he executed had been lawfully obtained.

*Id.* at \*16, 2020 WL 1174477, at \*6. We granted Appellant's petition for review under Article 67(b), UCMJ.

## II. Discussion

Consistent with the assigned issue, Appellant primarily contends that the NMCCA erred in concluding that the good faith exception applies. Appellant also raises several other arguments for the exclusion of the evidence that are partly related to the issue of good faith and partly related to other issues.[4] The Government's position at oral argument was that Captain Bushey had probable cause to issue the CASS and that, even if he did not, the good faith exception should apply.[5] We determine that the military judge did not abuse his discretion in suppressing the evidence under M.R.E. 311(a)(1)

---

[4] Appellant also argues that (1) Special Agent Garhart recklessly misstated information in the affidavit by referring to Noriega as Villanueva's alias; (2) Captain Bushey rubber-stamped the search authorization; and (3) the affidavit was insufficient in establishing a nexus between the alleged crime and *all of* Appellant's electronics.

[5] When this Court reviews cases that were initially appealed under Article 62, UCMJ, our rules do not afford parties the opportunity to file briefs. *See* C.A.A.F. R. 21(c)(1). Instead, we consider the arguments that the Appellant makes in the supplement to its petition for review and the Appellee's answer to the petition for review. *Id.* In this case, the Government did not file a timely answer, and we denied the Government leave to file an answer out of time. In the absence of objection by Appellant, we have considered the Government's arguments at oral argument.

because the CASS was issued without probable cause and because the requirements for the good faith exception in M.R.E. 311(c)(3) were not met. We therefore need not consider Appellant's additional arguments.

## A. Standard of Review

This Court reviews a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Armendariz*, 80 M.J. 130, 134 (C.A.A.F. 2020). A military judge abuses his discretion "when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller,* 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). In both an Article 62, UCMJ, appeal, and any review of a ruling on a motion to suppress, we view the evidence in the light most favorable to the party that prevailed on the motion at trial, which in this case is Appellant. *Blackburn*, 80 M.J. 205, 211 (C.A.A.F. 2020); *Lewis*, 78 M.J. 447, 452 (C.A.A.F. 2019).

## B. Probable Cause

Under these standards of review, the military judge did not abuse his discretion in addressing the issue of probable cause. First, the military judge's findings of fact were not clearly erroneous. The key facts as found by the military judge were that Appellant sent a series of electronic transfers to individuals in Taguig City; that Taguig City is known for child exploitation and sex trafficking; and that one of these payments was sent to a person involved in child sexual exploitation. The military judge also found that there was no evidence with respect to numerous questions about the possibility of finding child pornography in the search. All these findings of fact are supported by the affidavit. And as explained above, the record contains no evidence of additional information that Captain Bushey may have considered because Special Agent Garhart could not remember the details of the discussion during their in-person meeting.

Second, the military judge was not influenced by an erroneous view of the legal standard for determining whether probable cause exists. On the contrary, the military judge correctly stated and understood the standard that we applied in

*United States v. Nieto*, namely, that probable cause for a search and seizure authorization exists if the totality of the circumstances establish a "fair probability that evidence of a crime will be found at the identified location." 76 M.J. 101, 105 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted).[6]

Finally, the military judge's decision that probable cause did not exist was not outside the range of choices reasonably arising from the facts found by the military judge and this legal standard. While the affidavit did link Appellant to Villanueva and Taguig City, the military judge reasonably concluded that this link was insufficient to establish probable cause. As the Supreme Court has explained, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). The military judge also reasonably concluded that the fact that Appellant's money transfer to Noriega went unclaimed and was automatically returned to him "fairly implies a transaction in which [Appellant] received nothing for his

---

[6] We note one statement by the military judge that might indicate an incorrect view of the law. The military judge observed in his opinion that attempting to buy unlawful goods or services was "not the only reasonable explanation" for Appellant's efforts to send money to the Philippines. Instead, the military judge suggested that the payments might have an innocent explanation, such as "charity and family." If, in making this statement, the military judge believed that probable cause for a search could not exist unless the purchase of contraband was the *only reasonable* explanation for Appellant's payments, this understanding of the law would be in error. The Supreme Court has made clear that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). But in reviewing the entirety of the military judge's opinion—including his otherwise correct statements of the governing legal standards—we do not believe that this possible misunderstanding of the law had a material effect on the military judge's reasoning and conclusion. The military judge did not refer to or rely on possible innocent explanations when explaining the legal rationale for his ruling, but simply noted them in passing before concluding that the "the affidavit provided no information from which one might reasonably determine that the accused received electronic contraband."

money." Finally, the military judge reasonably concluded that there was insufficient information concerning the electronic equipment that Appellant might have kept in his home to conclude that evidence of a crime would be found by the search.

## C. Good Faith Exception

The military judge also did not abuse his discretion in addressing the good faith exception in M.R.E. 311(c)(3). This rule provides that "[e]vidence that was obtained as a result of an unlawful search or seizure may be used" if three conditions are met. These conditions are:

> (A) the search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;
>
> (B) the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and
>
> (C) the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard.

The military judge ruled that the Government had failed to establish the condition in M.R.E. 311(c)(3)(B).

In reaching this conclusion, the military judge relied on findings of fact that were not clearly erroneous. In addition to the facts discussed above, the military judge also found that Special Agent Garhart had sent a copy of the proposed CASS and his affidavit to Lieutenant Commander Andre Giddens, Captain Bushey's staff judge advocate, but did not remember whether Lieutenant Commander Andre Giddens attended the briefing. These findings are not clearly erroneous because they are supported by Special Agent Garhart's testimony. The Government provided no evidence, and the military judge made no finding about any advice that Lieutenant Commander Giddens may have provided to Captain Bushey. Indeed, as Special Agent Garhart testified, the answer to such questions would have to come from Captain Bushey, who did not testify.

The military judge also correctly cited and understood our cases interpreting M.R.E. 311(c)(3)(B). We have held that M.R.E. 311(c)(3)(B) is satisfied "if the law enforcement official had an objectively reasonable belief that the magistrate [or commander] had a 'substantial basis' for determining the existence of probable cause."[7] *United States v. Perkins*, 78 M.J. 381, 387 (C.A.A.F. 2019) (quoting *Carter*, 54 M.J. at 422). We further have held that this condition cannot be satisfied if the materials presented to the commander or magistrate issuing the search and seizure authorization are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Carter*, 54 M.J. at 419 (citation omitted).

The question in dispute is whether the military judge, in concluding that the good faith exception did not apply, abused his discretion by making a decision outside the range of choices reasonably arising from these facts and these legal standards. The NMCCA decided that the military judge had abused his discretion and concluded that the requirements of M.R.E. 311(c)(3)(B) were met for two reasons. First, the NMCCA determined that Special Agent Garhart had "a quantum of information sufficient to believe the CO would not hesitate to sign the search authorization." *White*, 2020 CCA

---

[7] This Court has understood M.R.E. 311(c)(3) as seeking "to codify the good faith exception as stated" in *United States v. Leon*, 468 U.S. 897 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981 (1984). *Perkins*, 78 M.J. at 387 (citing *Carter*, 54 M.J. at 420). In *Leon*, the Supreme Court held that a Fourth Amendment violation would not result in suppression if the police officer's conduct in question "is objectively reasonable," which is, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. at 919–20. This " 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " *Herring v. United States*, 555 U.S. 135, 145 (2009) (quoting *Leon*, 468 U.S. at 922 n.23). The Supreme Court in *Leon* delineated several specific instances where the circumstances would not be objectively reasonable, including where "a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)).

LEXIS 68, at \*16, 2020 WL 1174477, at \*6. Second, citing our recent decision in *Perkins*, the NMCCA noted that Special Agent Garhart "specifically provided this information to the CO and his SJA to seek legal advice prior to obtaining" the authorization. *Id.*, 2020 WL 1174477, at \*6.

We disagree with the NMCCA's analysis and conclusion. In our view, the military judge reasonably decided that the information that Special Agent Garhart provided to Captain Bushey was "so lacking in indicia of probable cause" that it was objectively unreasonable to believe—solely on the basis of this information—that probable cause existed. As the military judge explained, the affidavit left a number of items unclear, such as whether Appellant solicited or received child pornography, whether he possessed electronic devices on which he could store it, and whether those devices might be found in his home. Accordingly, the requirements of M.R.E. 311(c)(3)(B) were not met.

The NMCCA was correct in recognizing that we held in *Perkins* that reasonable reliance on the advice of counsel, depending on the circumstances, may make a belief in the existence of probable cause reasonable even if the advice of counsel ultimately turns out to be incorrect. *Perkins*, 78 M.J. at 388. But the NMCCA erred in relying on *Perkins* in this case because the facts are distinguishable. The record here establishes only that Special Agent Garhart delivered a copy of the proposed CASS and his affidavit to the staff judge advocate. Special Agent Garhart did not know what advice the staff judge advocate may have provided to Captain Bushey and could not recall whether the staff judge advocate participated in the briefing. *Cf. Blackburn*, 80 M.J. at 212 (weighing in favor of good faith that "legal counsel was on the call" when the agent briefed the magistrate). He therefore could not have reasonably relied on this advice.

We recognize that Special Agent Garhart attempted to comply with legal requirements. Most significantly, he showed the proposed CASS and affidavit to another agent and sent it to the staff judge advocate for review. He met with Captain Bushey to answer questions that Captain Bushey might have had. These efforts indicate honesty and conscientiousness. But the good faith exception requires more; as ex-

plained above, the exception requires an objectively reasonable belief that the commander had a substantial basis for determining the existence of probable cause. Without additional information about the advice that Special Agent Garhart received and the information that he conveyed to Captain Bushey, the military judge could reasonably conclude that the requirements of M.R.E. 311(c)(3)(B) were not met. For these reasons, we see no abuse of discretion by the military judge in suppressing the evidence from the search based on the facts and the applicable legal standards.

### III. Conclusion

The assigned issue is answered in the affirmative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The military judge's order in Appellate Exhibit IV is affirmed. The case is returned to the Judge Advocate General of the Navy for remand to the military judge for further proceedings consistent with this opinion.