# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellant**
v.
**Sergeant MICHAEL S. DELISFORT**
**United States Army, Appellee**

ARMY MISC 20240488

Headquarters, U.S. Army Maneuver Center of Excellence
Pamela L. Jones, Military Judge
Lieutenant Colonel John C. Olson, Special Trial Counsel

For Appellant: Colonel Richard E. Gorini, JA; Captain Anthony J. Scarpati, JA; Major Marc B. Sawyer, JA (on brief).

For Appellee: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Julia M. McCormick, JA (on brief).

5 May 2025

------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

This case is before us as an interlocutory appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [UCMJ]. Appellant contends the military judge abused her discretion when she dismissed the case without prejudice for discovery violations after she improperly suppressed derivative evidence, failed to articulate actual prejudice to the appellee, and selected an extreme remedy that was not just under the circumstances. For the reasons set forth below, we disagree and deny the government's appeal.

## BACKGROUND

### *Facts Leading to Appellee's Arrest*

Appellee is charged with four specifications of attempted sexual abuse of a child, in violation of Article 80, UCMJ. On 15 September 2023, the Criminal Investigation Division (CID) at Fort Moore, Georgia, conducted an undercover sting operation using Whisper and KIK, online chat applications. CID Investigator (INV) ▮posed as a fictitious 14-year-old girl named "Jessie Taylor." Appellee allegedly engaged in sexually suggestive messages under the name "Michael D" with "Jessie Taylor" and arranged to meet at a dog park on Fort Moore. At the time of the online exchange, CID did not know appellee's identity.

As part of the operation, CID agents at Fort Moore coordinated with CID agents in Quantico, Virginia to use "Clearview AI," an artificial intelligence facial recognition tool to identify the subject by using photos submitted in the chat with "Jessie Taylor" and comparing them to available images in records systems, including a Department of Public Safety (DPS) report, which provided detailed information on appellee, including his associated address; name; photo; vehicle make, model, and color; and, vehicle license plate.

On the evening of 21 September 2023, CID agents waited at the dog park, and observed a black Mazda parked near the dog park parking lot with who later was identified as appellee in the driver's seat. The CID agents believed appellee was the driver because they recognized the black Mazda from the DPS report, despite "Michael D" telling "Jessie Taylor" in the chat that he would be in a red truck. Although Fort Moore CID arranged for a petite female agent to walk down the adjacent street posing as "Jessie Taylor," this agent became lost and never arrived at the location. "Jessie Taylor" asked "Michael D" his status, and "Michael D" responded he had not yet left home, despite appellee sitting in the black Mazda parked nearby. As the black Mazda drove out of the parking lot, Fort Moore CID agents, including INV▮ and Special Agent ▮ conducted an investigative traffic stop and arrested appellee.

### *Government's Discovery Obligations and Lack of Preparedness During Trial*

After the assembly of the court, opening statements, and commencement of trial, the defense objected to the testimony of the government's first witness, SA ▮ referencing the Clearview AI facial recognition software. The defense objected again to the testimony of the government's second witness, arguing the government was trying to circumvent the use of Clearview AI facial recognition derived

evidence. The military judge allowed the defense to *voir dire* the witness, during which SA ▉ testified that "but for" the Clearview AI facial recognition software results, CID would not have known appellee's identity.[1] As of trial's commencement on 1 July 2024, no individual on the Government's witness list had conducted the Clearview AI search.

Defense argued the government's steps to identify appellee at trial violated the Confrontation Clause. The military judge sustained the Defense's objection to any reference to the Clearview AI facial recognition results, ruling the evidence inadmissible as testimonial hearsay and potential undisclosed expert testimony.

The government then claimed the Clearview AI facial recognition software was not the only basis to identify appellee, after which the Defense raised discovery concerns and the military judge granted a recess.

After the recess, the Government asked to call Mrs. ▉ telephonically, which the court noted still posed a confrontation issue. After another recess, the Government disclosed that the Clearview AI search was performed not by Ms. ▉, as originally believed, but by SFC ▉ a CID intelligence analyst who had not been identified or noticed to appear at trial. The court granted a continuance for the Government to secure the necessary witnesses.

At a 13 July 2024 motions hearing, Ms. ▉ testified that she had no contact with trial counsel before 1 July 2024. SFC ▉ also confirmed that he had not been contacted prior to that date. The military judge found that on 21 September 2023, SFC ▉ had performed the Clearview AI search, sent a DPS printout identifying appellee to SA ▉, and provided a link containing all possible matches. SA ▉ testified that the link he received that included all of the possible matches did not work and he did not report the issue. The Government never disclosed the other potential matches to the Defense.

---

[1] Special Agent ▉ testified:

ADC: And but for [Clearview AI facial recognition results], you would not know what the identity of that person is?

SA ▉: At that point in time, I would say we wouldn't have known.

ADC: Because using the identification through those means you identified the associated address, a car, license plate, all of those things?

SA ▉: Yes, ma'am.

The military judge found that "the Government's lack of preparation, lack of due diligence, and negligence led to discovery violations, which amounted to a failure to comply with R.C.M. 701."[2]

The military judge further found, that on "13 July 2024, the Defense learned, through speaking to [Ms. ███], that her Clearview AI search of the Accused returned possible matches; and the link that includes all of the matches was provided to [SA ██]. The link that included all of the matches was a surprise to the Defense. At a minimum, the Defense could use this evidence to challenge the process used to identify the Accused, and to develop other possible defenses." As of the military judge's ruling, the Government still had not produced the other potential matches from the search.

Additionally, the court addressed the Government's handling of mobile surveillance footage. On 13 February 2024, the Government provided discovery that included videos from mobile CCTV cameras. However, on or about 26 June 2024, the Government disclosed for the first time additional CCTV footage from a nearby camera and acknowledged it had only learned of that footage during a pretrial interview.

The military judge found "[t]his is evident by the fact that the Government had CCTV footage used by CID at the time of the Accused's arrest in its possession as early as 13 February 2024 [. . . ] but thought they first learned of it on 26 June 2024 during a pre-trial interview. This supports the theory that the pre-trial interview is when the Government first learned of the CCTV footage because they did not exercise due diligence to properly look through the case file."

Although the Government claimed it had spoken to Ms. ███ before listing her as a witness on its preliminary witness list on 20 May 2024, she testified that she had not been contacted until 1 July and would have remembered if she had been, as she is rarely called to testify.

The military judge found that Ms. ███'s testimony at the 13 July 2024 motions hearing "further shows the Government's lack of preparation and due diligence to even interview those included on its original witness list. Accordingly,

---

[2] This was not the first time the military judge addressed the government's substandard efforts in appellee's case. The military judge first addressed the government's lack of preparation and diligence with evidence at a 10 June 2024 motions hearing regarding the arrest and evidence seized, allowing the government to file a supplemental brief as it was arguing facts not previously submitted in evidence for the motion.

the court agrees with the Defense position that 'the Government's lack of preparedness was so significant that it caused not only discovery violations but also actual prejudice to the Accused.'"

The military judge also noted that the link to the Clearview AI results provided to SA███ was non-functional, and he never reported the issue.

The military judge initially dismissed the case with prejudice, finding both speedy trial and discovery violations by the government, however, on reconsideration she reversed her ruling on speedy trial and modified her remedy to dismissal without prejudice. In assessing prejudice to appellee, the military judge found "on 13 July 2024, the defense noted that they had to reveal its trial strategy to the Government to proffer evidence in support of the Government's alleged discovery violations. This weakened the [appellee's] ability to raise specific defenses, elicit specific items of evidence, raise certain objections, and otherwise present its case. *See Doggett v. United States,* 505 U.S. 647, 655 (1992)[.]"

Concluding, the military judge determined "[a] continuance was already granted in this case, and the court already sustained the Defense objection to the Government introducing the facial recognition or any results that stem from its search. Consequently, the court is of the opinion that a dismissal is just under the circumstances."

## LAW AND DISCUSSION

*Standard of Review and Applicable Law*

In an Article 62, UCMJ, appeal, we review the evidence in the light most favorable to the prevailing party at trial. *United States v. Henry,* 81 M.J. 91, 95 (C.A.A.F. 2021)(citations omitted). Article 62(b), UCMJ, limits this court's authority to "act only with respect to matters of law." Thus, we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous," *United States v. Pugh,* 77 M.J. 1, 3 (C.A.A.F. 2017), and "may not 'find [our] own facts or substitute [our] own interpretation of the facts.'" *United States v. Becker,* 81 M.J. 483, 489 (C.A.A.F. 2021) (quoting *United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F. 2007)). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court [] is left with the definite and firm conviction that a mistake has been committed." *United States v. Martin,* 56 M.J. 97, 106 (C.A.A.F. 2001) (quoting *United States v. Gypsum Co,* 333 U.S. 364, 395 (1948))(internal quotations omitted).

We review questions of law, such as a military judge's remedy for discovery violations, de novo. *United States v. Wicks,* 73 M.J. 93, 98 (C.A.A.F. 2014). "A military judge's choice of remedy for discovery violations is reviewed for an abuse

of discretion. A military judge abuses her discretion 'when the [military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.'" *United States v. Vargas,* 83 M.J. 150, 153 (C.A.A.F. 2023) (quoting *United States v. Miller,* 66 M.J. 306, 307 (C.A.A.F. 2008)) (internal citation and quotations omitted) (alteration in original).

*The Government's Discovery Obligations*

The government concedes that the trial counsel's failure to provide the Clearview AI facial recognition search results to the defense violated the government's discovery obligations under R.C.M. 701, but argues that the military judge's remedy of dismissal without prejudice was not warranted under the circumstances.[3] *See United States v. Stellato,* 74 M.J. 473, 480-81 (C.A.A.F. 2015) (holding government has an ongoing duty to disclose and exercise due diligence in locating and providing discovery). Reviewing the military judge's findings in the light most favorable to the prevailing party, this court finds that the military judge's findings of fact are supported by the record and not clearly erroneous.[4]

---

[3] The government further concedes that the military judge should have sustained the defense objection under the Confrontation Clause to the Clearview AI results' identification of appellee, but that her remedy to suppress derivative evidence was erroneous. Although the Appellant's assignment of error includes the clause "after improperly suppressing derivative evidence," the error that brings this issue before this court under Article 62(a)(1)(2), UCMJ, as stated in the government's notice of appeal, is the military judge's ruling dismissing the court-martial charges. This case was dismissed by the military judge not because of the suppression of evidence, but because of the government's discovery failures. For the sake of argument, if we were to reverse the military judge's suppression ruling, the government has still not complied with its discovery obligations, which was the basis for the military judge's dismissal. Thus, this court's jurisdiction over this appeal is limited to the military judge's dismissal of all charges and their specifications without prejudice. *See, e.g., United States v. Hill,* 71 M.J. 678, 680 (Army Ct. Crim. App. 2012).

[4] Contrary to the government's argument on appeal, the military judge gave the government ample opportunity to present evidence and establish a record during the 23 August 2024 motion hearing. The government decided to call no witnesses and simply attached a large portion of the CID case file as a supporting exhibit, which did little to clarify the government's position.

A finding of fact is only clearly erroneous when this court is "left with a definite and firm conviction that a mistake has been committed." *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001). The military judge's finding that, "but for" the facial recognition software, the government would not have known the identity of the accused at the time of his arrest is clearly supported by the record. *See United States v. Henry*, 81 M.J. 91, 95 (C.A.A.F. 2021). The testimony of SA DT was clear that the Clearview AI facial recognition software was the basis of the government's *prima facie* case for identifying appellee. At trial, and on appeal, the government has offered no theory[5] as to how they would have identified appellee prior to his felony traffic stop and arrest, "but for" the Clearview AI derived information – his associated name and Fort Moore address; vehicle make, model, and color; and, license plate. Without the Clearview AI results, the government did not have a link between the screen name in an online chat and appellee, who was sitting in a different car than the one described in the chat, located in a housing area parking lot near – but not at – the agreed-on meeting location from the chat, all while the chat conversation indicated appellee had not yet left his home.

The military judge's finding that the government failed its due diligence under Article 46, UCMJ and R.C.M. 701(a)(2), causing delay, confusion of the issues, and unfair prejudice to the accused by causing the defense to engage in unnecessary pre-trial litigation mid-trial is supported by the record. *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004); *Stellato*, 74 M.J. at 481-82. Contrary to the government's argument, the military judge articulated specific prejudice to appellee. As the military judge noted, at a minimum the defense could have used this evidence to challenge the facial recognition software process and the subsequent identification and investigative activity, or the defense could have developed other evidence and other possible defenses had the government disclosed this relevant evidence prior to the start of trial. However, the government failed to disclose, and worse, was seemingly unaware, until *after* assembly of the court, opening arguments, and receipt of evidence – adversely impacting the defense's preparation.

*Military Judge's Remedy*

The military judge continued to modify and reconsider the remedies under R.C.M. 701(g)(3)[6] as the government's failure to meet their discovery obligations

---

[5] Further, as the military judge noted in her findings, when the government was asked by the defense about independent avenues of identification other than the Clearview AI search the government responded by saying "oh, we don't have any."

[6] Rule for Court-Martial 703(g)(3) provides that "if at any time during the court-martial it is brought to the attention of the military judge that a party has failed to

(continued . . .)

became clearer and their lack of due diligence more egregious. Our superior court has recognized that a dismissal, even one with prejudice, may be an appropriate remedy for a discovery violation under R.C.M. 701(g)(3)(D) when "after considering whether lesser alternative remedies are available, the military judge determines that such a remedy is just under the circumstances." *Vargas* 83 M.J. at 153-154 (citing *Stellato*, 74 M.J. at 488). The military judge noted that she had already granted a continuance and prohibited the government from introducing evidence of the Clearview AI results. After the military judge determined that the remedies under R.C.M. 701(g)(3)(A)-(C) were not sufficient, she ordered a remedy, dismissal *without prejudice*, which she found just under the circumstances.

The military judge found the government's violations included failing to disclose discovery to the defense; failing to conduct due diligence in the pretrial investigation; failing to prepare its case; failing to identify necessary witnesses to present its case; failing to interview and prepare its witnesses; failing to comply with court instructions; and failing to comply with its discovery obligations. The military judge crafted escalating remedies to incentivize government compliance, until ultimately the government's mounting failures were such that dismissal without prejudice was just under the circumstances. The military judge's remedy resets the playing field, reestablishes equal opportunity to obtain evidence and witnesses, and provides the defense adequate time to prepare for trial.

The military judge's factual findings are not clearly erroneous, and her decision to dismiss the case *without prejudice* was within her discretion after lesser sanctions failed and trial had commenced. *See Miller,* 66 M.J. at 307. Under Article 62, UCMJ, this court must defer to the military judge's factual determinations unless they lack support in the record, and in this instance dismissal without prejudice is within the range of just under the circumstances and reasonable remedies for a significant discovery violation after the commencement of the trial. R.C.M. 703(g)(3).

## CONCLUSION

The government appeal is DENIED. We return the record of trial to the military judge for action consistent with this opinion.

---

(. . . continued)
comply with this rule, the military judge may take one or more of the following actions: (A) Order the party to permit discovery; (B) Grant a continuance; (C) Prohibit the party from introducing evidence, calling a witness, or raising a defense not disclosed; and, (D) Enter such order as is just under the circumstances."

Chief Judge POND and Judge MORRIS concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court