# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40250**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Charles S. NESTOR**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 June 2023

————————————

*Military Judge:* Matthew P. Stoffel.

*Sentence:* Sentence adjudged on 8 October 2021 by GCM convened at Kadena Air Base, Japan. Sentence entered by military judge on 2 November 2021: Dishonorable discharge, confinement for 16 months, and reduction to E-1.

*For Appellant:* Major David L. Bosner, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Morgan R. Christie, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

ANNEXSTAD, Judge:

At a general court-martial, a panel of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification each of wrongfully possessing and distributing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] A military judge sentenced Appellant to a dishonorable discharge, confinement for 16 months, and reduction to the grade of E-1. The convening authority took no action on the sentence.

Appellant raises seven issues which we have reordered and reworded: (1) whether the military judge abused his discretion when he permitted the Government to introduce certain character evidence under Mil. R. Evid. 404(b); (2) whether the military judge committed reversible error in his instructions to the members; (3) whether Appellant's conviction for possession of child pornography (Specification 1) is legally and factually sufficient; (4) whether Appellant's conviction for distribution of child pornography (Specification 2) is legally and factually sufficient; (5) whether the findings of guilty constituted an unreasonable multiplication of charges; (6) whether Appellant's convictions of Specifications 1 and 2 are legally and factually sufficient as to the terminal element; and (7) whether Appellant is entitled to a unanimous verdict under the Fifth and Sixth Amendments.[2,3]

With respect to issues (5), and (7), we have carefully considered Appellant's contentions and find they do not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

We consolidate issues (3), (4), and (6) since they concern the legal and factual sufficiency of both specifications. We find error and provide relief for issue (4). We affirm the remaining findings of guilty and the sentence, as reassessed.

## I. BACKGROUND

As part of a Joint Crimes Against Children Task Force in June of 2020, Naval Criminal Investigative Service (NCIS) investigators discovered Appellant's use of an Internet protocol (IP) address associated with suspected child pornography. NCIS Special Agent (SA) GH described at trial how he used investigative peer-to-peer software to search for child pornography on a

---

[1] All references to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] U.S. CONST. amend. V and VI.

[3] On 29 March 2023, Appellant withdrew one additional issue for our consideration alleging that the record of trial was incomplete.

particular peer-to-peer file sharing network.[4] He explained that peer-to-peer file sharing networks rely on individual users to download and share files, and that when a user downloads a file using peer-to-peer software, the software by "default" automatically begins sharing the file—or pieces thereof—with other network users.

SA GH testified he used peer-to-peer software designed specifically for law enforcement agents (modified software) to conduct an undercover child pornography investigation on 23 June 2020. He explained that the modified software differed from the publicly available software (standard software) in several respects, including two features significant to this case. First, unlike the standard software, the modified software did not share any downloaded files. Second, the modified software connected to only one IP address at a time—meaning the entire file is downloaded from one individual instead of pieces of a file from many. Using these features, SA GH downloaded a suspected child pornography video from an IP address in Okinawa, Japan—belonging to Appellant—which was serviced by a local Japanese Internet service provider (ISP). The downloaded video, hereinafter referred to as the spanking video, was admitted as a prosecution exhibit[5] at trial and SA GH described it as follows:

> It depicts a – it's a living room-type setting, what looked like appeared to be an ottoman. There was a – what appeared to be a low-teen, preteen child bent over, couldn't tell if it was male or female, with what appeared to be an adult, white male, spanking the unclothed bare bottom of the other individual.

SA GH sent a request to the Japanese ISP to determine the registered owner of the IP address in question. The Japanese ISP responded with "Tech Sergeant Charles Nestor" and provided the registered owner's work location. After identifying Appellant as an Air Force member, SA GH turned over the investigation to the Air Force Office of Special Investigations (AFOSI).

On 9 July 2020, AFOSI, led by SA JR, along with Okinawan police, obtained a search authorization for Appellant's off-base residence where they subsequently seized 27 electronic devices, including, *inter alia,* a Lenovo laptop and a ThinkPad laptop. The devices were sent to the Department of Defense Cyber Crime Center Cyber Forensics Laboratory (DC3/CFL) for analysis, where it was determined that Appellant was the registered owner and a

---

[4] Without objection, the military judge recognized Special Agent GH as an expert in the fields of "digital forensics" and "peer-to-peer software."

[5] The video was admitted as Prosecution Exhibit 5.

regular user for both laptops. It also revealed Appellant had password-protected both laptops, and they both contained evidence relevant to the question of whether the Appellant knowingly possessed child pornography and knowingly distributed a child pornography video between December 2019 and July 2020.[6]

Mr. TB, a cyber forensics examiner from DC3/CFL, conducted the forensic analysis on Appellant's two laptops and testified at trial as an expert in the field of digital forensics. Mr. TB testified that he discovered—in a subfolder located on the Lenovo laptop—a commercially produced foreign film entitled "Maladolescenza," which featured three different minors engaging in sexually explicit conduct. He also found two additional videos depicting a preteen girl masturbating with a water faucet in a bathtub. Mr. TB stated these files were downloaded using Appellant's user profile beginning in December 2019 and all the files had to be specifically placed in the subfolder by Appellant.

Mr. TB further testified the Lenovo laptop contained: (1) 28 additional files with filenames indicative of child pornography; and (2) 72 other movies or video files "that contained scenes with children, at some stage [of] undress[ ]," including videos depicting what appeared to be children changing clothes at a beach house, showering, and engaging in sexual activity. In addition to items (1) and (2), *supra*, Mr. TB stated that he discovered three additional video clips of scenes spliced together in VLC media player that exhibited a child in some stage of undress, including an adult female bathing a nude prepubescent female and a teenage male and female who are both topless. He stated two of the three video clips were recorded scenes from a commercially produced German movie and the video clips captured the limited scenes in the film where a child was undressed to some degree.

In addition to the Lenovo laptop, Mr. TB also testified that he found 97 deleted files with filenames indicative of possible child pornography on the ThinkPad laptop data drive. He stated that while he could still see the filenames, the files themselves were empty. Mr. TB indicated the filenames included "preteen hardcore" and explicit and lascivious references to sexual acts involving minors. He also stated that the operating system on Appellant's computer, based on Appellant's interaction with the files, had created shortcut links to filenames in his "recent" folder containing the term "preteen hardcore" where additional filenames suggesting child pornography were also discovered. Mr. TB explained that in order to create the shortcut link, the user would have

---

[6] The rest of the devices seized from Appellant's residence contained no relevant information concerning the charged offenses.

opened the files at one point in time. He also stated that the globally unique identifier (GUID) for the standard software on the ThinkPad was the same GUID listed by NCIS for the standard software from which the spanking video was obtained. Finally, Mr. TB confirmed the files were downloaded on both laptops between December 2019 and July 2020, but later deleted.

Contrary to his pleas, a panel of officer and enlisted members convicted Appellant of one specification of knowingly and wrongfully possessing child pornography, and one specification of knowingly and wrongfully distributing child pornography.

## II. DISCUSSION

### A. Mil. R. Evid 404(b)

Appellant argues the military judge abused his discretion by permitting the Government to introduce character evidence under Mil. R. Evid. 404(b). We find that the military judge did not abuse his discretion and that Appellant is not entitled to relief.

#### 1. Additional Background

On 29 July 2021, the Defense submitted a request for a bill of particulars to the Government. Specifically, the Defense requested a list of the media file-names that the Government was alleging were child pornography and in Appellant's possession. On 9 August 2021, the Government responded with a chart containing 41 total filenames. On 1 October 2021, the Government amended its response by adding one more filename to the chart for a total of 42 files. These 42 files consisted of the three videos taken from the Lenovo laptop, one video taken from the Thinkpad laptop (the spanking video), and 38 other filenames that were in the recycling and recent folders on the Thinkpad laptop.[7]

On 11 August 2021, the Government provided the Defense with notice of its intent to offer evidence under Mil. R. Evid. 404(b). On 2 October 2021, two days before trial the Defense moved to exclude certain material from being offered under Mil. R. Evid. 404(b). The Government opposed the motion. The evidence the Government sought to introduce under Mil. R. Evid. 404(b), for the purpose of showing that Appellant had knowledge of possession and distribution of child pornography, included: (1) 28 child erotica videos and a foreign movie featuring scenes of unclothed children that were found on Appellant's

---

[7] The videos from the Lenovo laptop included the "Maladolescenza" video and the two videos depicting a preteen girl masturbating in a bathtub.

Lenovo laptop; (2) evidence that Appellant possessed short VLC clips of scenes involving nude minors from various movies on his Lenovo laptop; and (3) an additional 97 deleted files with filenames indicative of child pornography on Appellant's ThinkPad laptop. On 4 October 2021, the military judge received additional evidence and heard arguments on the motion during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. During argument, Government counsel clarified that evidence found on Appellant's laptops included the 42 charged files as well as files they were attempting to offer under Mil R. Evid. 404(b). On 5 October 2021, the military judge issued a written ruling denying the defense motion.

### a. Child Erotica

We first address the 28 files of child erotica found on Appellant's Lenovo laptop. The military judge determined the Lenovo laptop was owned and regularly used by Appellant; had one user-created profile with a username of "Charl"—the first portion of Appellant's name; the files were found on a device seized from Appellant's residence; and "there [was] no indication that Appellant did not have access to the device at the time files were downloaded." Furthermore, the military judge determined the only other occupants in Appellant's residence were his wife and two daughters. The military judge stated the evidence reasonably supported Appellant's possession and viewing of these files.

The military judge also determined the evidence was relevant to Appellant's knowing possession and distribution of child pornography, in that it may establish Appellant's sexual interest in minors, particularly minors engaged in sexual conduct, and that Appellant had a motive to have the files in his possession. He also found the filenames were relevant circumstantial evidence that Appellant knew he possessed child pornography. The military judge found the probative value of the evidence was high due to the lack of other evidence in the case supporting Appellant's knowing possession and distribution. He found the danger of unfair prejudice was moderate, due in part to the number of files that contained alleged child erotica (28) as compared to the small number of files that contained alleged child pornography (3)—that is, the "Maladolescenza" film and two videos of a preteen girl in a bathtub. The military judge concluded, "Put more finely, the evidence contained in each [erotica] video file will become somewhat cumulative at a certain point, such that the danger of unfair prejudice may reach the point of substantially outweighing the collective probative value of the evidence . . . ."

### b. VLC Video Clips

Next, we consider the three VLC video clips found on Appellant's Lenovo laptop indicating that Appellant spliced together movie clips of children in various stages of undress. The military judge found evidence supported a finding that Appellant used video editing software to compile short video clips of scenes involving nude minors. Consistent with his analysis of the child erotica, and supported by the testimony of Mr. TB, the military judge found that Appellant was responsible for either creating these clips using VLC software, or possessing these clips found on his computer. Again the military judge stated the evidence was relevant to the issue of whether Appellant knowingly possessed and distributed child pornography. The military judge determined the probative value of the evidence was high as it demonstrated that Appellant had knowledge of the content of at least some of the files in question at or near the time the child pornography was downloaded onto his devices. The military judge assessed the danger of unfair prejudice from this evidence to be low.

### c. Filenames of Deleted Files

Concerning the 97 deleted files with filenames indicative of child pornography found on Appellant's ThinkPad laptop data drive, the military judge incorporated the analysis above that the evidence indicated Appellant possessed files indicative of child pornography between December 2019 and July 2020 on his computer. He also concluded the evidence was relevant as it may demonstrate that Appellant had a sexual interest in minors, which would make his knowing possession and distribution more likely. He also determined that the fact the files were deleted went to the weight of the evidence. The military judge found the probative value of this evidence was moderate, noting that while the contents of the files would have offered a higher probative value, there was probative value in that the deleted files were located on the same laptop as the video downloaded by law enforcement using the modified software. The military judge assessed the danger of unfair prejudice as low to moderate, and ultimately concluded that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

### 2. Law

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) [ ] incorrect legal principles were used; or (3) [ ] his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344

(C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008) (per curiam)). Stated another way, an abuse of discretion occurs when the military judge's decision is "outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citation omitted).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. Moreover, it cannot be used to show predisposition toward crime or criminal character. *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010). However, such evidence may be admissible for another purpose, including to show, *inter alia*, motive, intent, plan, absence of mistake, or lack of accident. *Id.*; Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989).

We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) Does the evidence reasonably support a finding by the factfinder that Appellant committed the other crime, wrong, or act? (2) Does the evidence of the other act make a fact of consequence to the instant offense more or less probable? (3) Is the probative value of the evidence of the other act substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403. *United States v. Reynolds*, 29 M.J. 105, 109 (C.A.A.F. 1989) (citations omitted). "If the evidence fails to meet any one of these three standards, it is inadmissible." *Id.*

Concerning the third *Reynolds* prong, our superior court has instructed that "the military judge enjoys wide discretion when applying [the] Mil. R. Evid. 403" balancing test. *United States v. Tanksley*, 54 M.J. 169, 176 (C.A.A.F. 2000) (internal quotation marks and citations omitted), *overruled in part on other grounds by United States v. Inong*, 58 M.J. 460 (C.A.A.F. 2003). They have also made clear that they will exercise great restraint in reviewing the decision and will give the decision maximum deference in determining whether there is a clear abuse of discretion when a military judge conducts Mil. R. Evid. 403 balancing on the record. *Id.* at 176–77.

### 3. Analysis

On appeal, Appellant contends that the military judge's application of legal principles to the facts was unreasonable. Specifically, Appellant argues the military judge reached the wrong conclusion concerning the third prong of the *Reynolds* test in finding the evidence's probative value was not substantially

outweighed by the danger of unfair prejudice. We find that the military judge did not abuse his discretion.

In his written ruling, the military judge applied the first *Reynolds* prong—whether the evidence reasonably supported a finding that Appellant engaged in other acts—and was satisfied the factfinder could reasonably determine Appellant was the person responsible for possessing the child erotica, video clips, and the deleted files found on the two devices that he owned and regularly used. We find the military judge's factfinding on the first *Reynolds* prong was supported by the evidence of record. Thus, we conclude that the military judge properly applied the first *Reynolds* prong.

The military judge applied the second *Reynolds* prong—whether the evidence of the other acts makes a fact of consequence to the instant offenses more or less probable—and found the uncharged acts were evidence of Appellant's sexual interest in minors and motive to have the files in his possession. The military judge properly recognized that primary facts of consequence in this litigated case were Appellant's knowing possession and distribution of child pornography. Evidence of Appellant's sexual interest in children, his possession of child erotica, video clips of children in various stages of undress, and deleted files with filenames indicative of child pornography made the facts that Appellant knowingly and wrongfully possessed child pornography more probable. Thus, we conclude that the military judge's application of the second *Reynolds* prong was not clearly unreasonable.

Applying the third *Reynolds* prong, the military judge found the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Here, the military judge provided written assessments of both the probative value and the potential prejudice on each of the individual pieces of uncharged evidence the Government sought to introduce. Exercising great restraint and providing maximum deference to the military judge's decision, we find the military judge's written analysis is not outside the range of choices reasonably arising from the specific facts of this case and the law. *See Miller*, 66 M.J. at 307.

The military judge did not abuse his discretion in ruling the evidence that Appellant possessed 28 files of child erotica and spliced VLC clips showing children in various stages of undress, and that his laptop showed filenames of deleted files that were indicative of child pornography, was admissible for the limited purposes of showing Appellant's intent and motive to knowingly possess and distribute child pornography. His findings of fact were supported by the record and therefore were not clearly erroneous. Appellant has not shown the military judge incorrectly applied the law or that his ruling was arbitrary,

fanciful, clearly unreasonable, or clearly erroneous. *See United States v. Shields*, ___ M.J. ___, No. 22-0279, 2023 CAAF LEXIS 270, at \*9 (C.A.A.F. 28 Apr. 2023) (articulating abuse of discretion standard); *see also Morrison*, 52 M.J. at 122.

## B. Military Judge's Instructions

Appellant claims the military judge erred by providing a list of charged filenames that the Government alleged constituted child pornography in his instructions to the members. He claims that this instruction created confusion between which files were charged and which files were admitted solely pursuant to Mil. R. Evid. 404(b). We find Appellant waived any objections to the military judge's instructions and we are not persuaded to pierce waiver in this case.

### 1. Additional Background

During an Article 39(a), UCMJ, session concerning instructions, the military judge asked trial counsel if there were "any additional requests for special instructions" other than an unopposed request for an instruction on the definition of "masochism." To alleviate a concern expressed by trial defense counsel at an earlier hearing regarding the particular files meeting the definition of child pornography, trial counsel suggested highlighting the files on two prosecution exhibits—14 and 15—which would clarify what files the Government alleged met the definition of child pornography. The Government further suggested that highlighting the charged files would also clarify to the members that the non-highlighted files in the two exhibits were the uncharged files admitted only for Mil. R. Evid. 404(b) purposes. The military judge responded that he would rather provide the members with only a list of the charged files in his instructions. Trial defense counsel did not object or propose an alternative course of action to the military judge's proposal.

During a recess after discussing instructions, the military judge conducted a Rule for Courts-Martial (R.C.M.) 802 conference with counsel. Back on the record, the military judge described that during the conference both "counsel requested some clarification as far as the court's expectations as it relate[d] to the [P]rosecution's request to how best to identify what they are alleging as child pornography." Trial defense counsel did not voice a desire to supplement the military judge's summary of the conference, nor did they raise any issues or lodge any objections with respect to the identification of the charged child pornography. The military judge then indicated that he was going to take a long recess to finalize the instructions and would provide the instructions to the parties for review. The military judge referenced trial counsel's request to include the specific filenames in the written instruction: "As we had discussed,

I believe trial counsel indicated they were going to provide files, filenames that are at issue in this case to the court, to include in the written instructions. I'll be sure to include those once I receive them." Trial defense counsel again did not object, raise any issue, or lodge any objections to the military judge's proposed plan to insert the filenames in his written instructions to the members. The military judge then asked trial defense counsel, "[A]re there any other matters that we need to take up regarding instructions?" Trial defense counsel responded, "No, Your Honor." Subsequently, both trial and trial defense counsel had an opportunity to review the final instructions. Trial defense counsel did not express any objection to the list of filenames in the instructions.

The military judge provided the members a list of 42 filenames that the Government alleged met the definition of child pornography. After reading the instructions, and before the members retired to deliberate, the military judge asked, "Do counsel object to the instructions given or request additional instructions?" Trial defense counsel responded, "No, Your Honor."

### 2. Law

"Failure to object to an instruction or to omission of an instruction before the members close to deliberate forfeits the objection." R.C.M. 920(f). We review forfeited issues for plain error. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). "[T]o establish plain error an appellant must demonstrate (1) error, (2) that is clear or obvious at the time of the appeal, and (3) prejudicial." *United States v. Long*, 81 M.J. 362, 369–70 (C.A.A.F. 2021) (internal quotation marks and citation omitted).

In contrast to forfeiture, an appellant waives a right to raise the issue on appeal where he "affirmatively declined to object to the military judge's instructions and offered no additional instructions." *Davis*, 79 M.J. at 331. "Whether an appellant has waived an issue is a legal question we review de novo." *Id.*

Generally, an affirmative waiver leaves "nothing left" to correct on appeal. *Id.* However, pursuant to Article 66(d)(1), UCMJ, Courts of Criminal Appeals (CCAs) have the unique statutory responsibility to affirm only so much of the findings and sentence that they find are correct and "should be approved." 10 U.S.C. § 866(d)(1). This includes the authority to address errors raised for the first time on appeal despite waiver of those errors at trial. *See, e.g.*, *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018). A CCA assesses the entire record and determines "whether to leave an accused's waiver intact, or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted).

"The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163–64 (C.M.A. 1990)).

### 3. Analysis

The threshold question is whether Appellant preserved, forfeited, or waived his allegation of error in the military judge's instructions. Trial defense counsel did not object to the challenged instructions, even when the military judge asked, so the issue was waived, and we decline to pierce that waiver.

The military judge involved counsel in the drafting and tailoring of his instructions. He listened to the concerns of counsel and determined what type of instructions counsel wanted, provided counsel with draft instructions, and solicited objections to and requests for additional instructions. After the military judge provided the instructions to the court members, he again asked counsel if they objected to any of the instructions, and received none. Because trial defense counsel affirmatively declined to object to the findings instructions and offered no additional instructions, Appellant expressly and unequivocally acquiesced to them, constituting waiver. *See United States v. Rich*, 79 M.J. 472, 476 (C.A.A.F. 2020) (citations omitted).

Finding waiver, we next consider whether to pierce Appellant's waiver relating to the instructions. Having reviewed the entire record, and mindful of our mandate to "approve only that which 'should be approved,'" we have determined to leave intact Appellant's waiver of the alleged error. *See Chin*, 75 M.J. at 223.

## C. Legal and Factual Sufficiency

Appellant contends that the evidence is legally and factually insufficient to support the findings of guilty for both specifications. As discussed below, we find the evidence supporting Appellant's conviction for possession of child pornography is both legally and factually sufficient. However, we find the evidence to support Appellant's conviction for distribution of child pornography is legally and factually insufficient.

### 1. Law

Issues of legal and factual sufficiency are reviewed de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted), *cert. denied*, 139 S. Ct. 1641 (2019). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (internal quotation marks omitted) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

As an evidentiary standard, proof beyond a reasonable doubt does not require more than one witness to testify "as long as the members find that the witness's testimony is relevant and is sufficiently credible." *United States v. Rodriguez-Rivera,* 63 M.J. 372, 383 (C.A.A.F. 2006).

To find Appellant guilty of possession of child pornography in violation of Article 134, UCMJ, the members were required to find the following elements beyond a reasonable doubt: (1) that between on or about 8 December 2019 and on or about 9 July 2020, at or near Kadena Air Base, Okinawa, Japan, Appellant knowingly and wrongfully possessed child pornography, that is, visual depictions of minors, or what appears to be minors, engaging in sexually explicit

conduct; and (2) that under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 95.b.(1).

To find Appellant guilty of distribution of child pornography in violation of Article 134, UCMJ, as charged, the members were required to find the following elements beyond a reasonable doubt: (1) that between on or about 8 December 2019 and on or about 9 July 2020, at or near Kadena Air Base, Okinawa, Japan, Appellant knowingly and wrongfully distributed child pornography, that is, a visual depiction of a minor, or what appears to be a minor, engaging in sexually explicit conduct; and (2) that under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 95.b.(3).

Child pornography is "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4). "Sexually explicit conduct" means actual or simulated:

> (a) sexual intercourse or sodomy, including genital to genital, oral to genital, anal to genital, or oral to anal, whether between persons of the same or opposite sex;
>
> (b) bestiality;
>
> (c) masturbation;
>
> (d) sadistic or masochistic abuse; or
>
> (e) lascivious exhibition of the genitals or pubic area of any person.

*MCM*, pt. IV, ¶ 95.c.(10). A minor is "any person under the age of 18 years." *MCM*, pt. IV, ¶ 95.c.(7).

To be convicted of possession or distribution of child pornography, an appellant must be "aware that the images were of minors, or what appeared to be minors, engaged in sexually explicit conduct. Awareness may be inferred from circumstantial evidence such as the name of a computer file or folder . . . [or] the number of images possessed" by the appellant. *MCM*, pt. IV, ¶ 95.c.(5).

Our court recently addressed service discrediting conduct as the terminal element:

> "Whether any given conduct [is service discrediting] is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any

particular course of action." "[T]he degree to which others became aware of the accused's conduct may bear upon whether the conduct is service discrediting," but actual public knowledge is not a prerequisite. "The trier of fact must determine beyond a reasonable doubt that the conduct alleged actually occurred and must also evaluate the nature of the conduct and determine beyond a reasonable doubt that [the appellant]'s conduct would tend to bring the service into disrepute if it were known."

*United States v. Heppermann*, 82 M.J. 794, 801 (A.F. Ct. Crim. App. 2022) (alterations in original) (quoting *United States v. Phillips*, 70 M.J. 161, 165, 166 (C.A.A.F. 2011)) (additional citation omitted), *rev. denied*, 83 M.J. 103 (C.A.A.F. 2022).

### 2. Analysis

### a. Wrongful Possession of Child Pornography (Specification 1)

Appellant contends his conviction for possession of child pornography is both legally and factually insufficient. Specifically, Appellant argues (1) the deleted files had no content; (2) the spanking video did not constitute child pornography; (3) compelling circumstantial evidence indicated that any possession of child pornography was unknowing; and (4) no evidence was presented to prove the terminal element of the offense. We find the evidence legally and factually sufficient and that no relief is warranted.

Our review of the record finds that the Government introduced convincing evidence for a rational factfinder to find beyond a reasonable doubt Appellant guilty of possessing child pornography between 8 December 2019 and 9 July 2020. At trial, the Government provided sufficient evidence that Appellant possessed three videos containing child pornography, specifically the "Maladolescenza" video and the videos of a preteen girl masturbating in a bathtub. We address the spanking video in more detail below. Most significant was the testimony of the Government's digital forensic expert (Mr. TB) who testified that the videos were found on two password-protected devices owned and primarily used by Appellant. Furthermore, the expert testified his forensic examination showed that Appellant individually downloaded the three videos on separate days and saved the videos to a separate folder on his computer. Furthermore, he testified that Appellant interacted with the videos by clicking on the files, opening the files, and moving the files to a separate folder—thus creating a "link file" on the computer's directory. The three videos in question plainly show visual depictions of minors, or what appear to be minors, engaged in sexually explicit behavior. The Government also presented other evidence in the form of multiple files and videos of child erotica, spliced video clips of children

15

in various stages of undress, and deleted files with filenames indicative of child pornography on Appellant's devices. This circumstantial evidence allowed the members to find Appellant had a sexual interest in children and a motive to possess child pornography, and helped establish that Appellant knowingly possessed child pornography.

We next turn to Appellant's more specific contentions. First, Appellant contends that he cannot be sure which videos he was ultimately convicted of possessing, and that it is possible that he was convicted of possessing the deleted files that did not have any content on the basis of their filenames. We find Appellant's argument unpersuasive. Under the general verdict rule, this court does not require the factfinder in a child pornography case to specify which videos generated the guilty verdict. *See United States v. Piolunek*, 74 M.J. 107, 111–12 (C.A.A.F. 2015) (citing *United States v. Rodriguez*, 66 M.J. 201, 204 (C.A.A.F. 2008)) (additional citations omitted) (discussing the deep-rooted common law rule that when a factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence was sufficient with respect to any one of the acts charged). Here, the members did not have to specify which videos constituted child pornography, as long as they found that one of the videos amounted to child pornography.

Appellant also argues there was compelling circumstantial evidence that demonstrated his possession of child pornography was unknowing. Specifically, Appellant argues the fact that only 2 of the 27 devices seized contained child pornography is compelling circumstantial evidence that his possession of the three videos was unknowing. A rational factfinder could have determined that Appellant knew he possessed child pornography, based on the testimony of the Government's forensic examiner and the substantial other-acts evidence offered at trial that tended to show Appellant had a sexual interest in children and a motive to possess child pornography. Appellant also states the Government did not show that he interacted with the three videos. However, the testimony from the Government's forensic expert disputes such an argument and, in fact, provides direct evidence that Appellant did interact with videos.

Finally, Appellant argues the Government offered no evidence to support that Appellant's possession of child pornography "was of a nature to bring discredit upon the armed forces." Appellant states that he raises this issue as an attempt to have our superior court reevaluate its decision in *Phillips*.

In *Phillips*, the United States Court of Appeals for the Armed Forces found that for an offense charged in violation of Clause 2 of Article 134, UCMJ, "proof of the conduct itself may be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that, under all the circumstances, it was of a nature

to bring discredit upon the armed forces." *Phillips*, 70 M.J. at 163. Appellant claims the factfinder could not just infer from the facts and circumstances surrounding the offense that the Clause 2 language was met beyond a reasonable doubt in his case. He claims the factfinder was required to be presented with direct evidence.

We begin our analysis by noting we disagree with Appellant's contention that only direct evidence is sufficient to prove the terminal element of the charged offense. In this case, the members were presented with evidence that Appellant was a member of the United States Air Force, living in a local community off-base in Japan, and that Appellant used a civilian Japanese ISP to find and download child pornography. The evidence also demonstrated that Appellant provided his military rank and work location on Kadena Air Base when he signed up for Internet service. Additionally, the evidence showed local Okinawan police participated in the lawful search of Appellant's residence, where two laptops were seized that contained evidence of child pornography. The factfinder could use this evidence to determine whether Appellant's conduct tended to discredit the service.

Moreover, the factfinder could consider evidence of the crimes themselves in determining whether Appellant's conduct tended to discredit the service, including the content of the videos found on Appellant's laptop. *See United States v. Anderson*, 60 M.J. 548, 555 (A.F. Ct. Crim. App. 2004) (finding, after its review of graphic images of child pornography, that they "remove any reasonable doubt that they are . . . of a nature to bring considerable discredit upon the armed forces"); *see also United States v. Richard*, 82 M.J. 473, 477–79 (C.A.A.F. 2022) (finding evidence that only *tends* to prejudice good order and discipline is not sufficient proof of that element, in contrast to conduct of a nature to bring discredit upon the armed forces in a case involving Article 134, UCMJ). We find the members had a sufficient basis from the evidence introduced at trial to determine beyond a reasonable doubt that Appellant's conduct was of a nature to bring discredit upon the armed forces.

In conclusion, when viewing the evidence offered at trial in the light most favorable to the Government, a rational factfinder could readily find the essential elements of the offense—possession of child pornography—for which Appellant was convicted beyond a reasonable doubt. We therefore conclude the evidence is legally sufficient to support Appellant's conviction. *See Robinson*, 77 M.J. at 297−98. Additionally, giving the appropriate deference to the trial court's ability to see and hear the witnesses, and after our own independent review of the record, we ourselves are convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

### b. Wrongful Distribution of Child Pornography (Specification 2)

Appellant alleges the finding of guilty for wrongful distribution of child pornography is both legally and factually insufficient. Appellant argues, *inter alia*, that the spanking video does not constitute child pornography in that it does not depict a minor engaged in sexually explicit conduct. We agree.

Our review of the evidence offered at trial, including our objective review of the spanking video, finds that the video itself does not depict a minor engaged in sexually explicit conduct as defined in the *MCM*, to include sadistic or masochistic abuse. As described earlier, the video in question depicts an adult male spanking the bare bottom of what appears to be a child. The view of the camera is from the side. Nothing in the video suggests that either party in the video is receiving any sexual gratification from the spanking. Therefore, viewing the evidence offered at trial in the light most favorable to the Government, we conclude that a rational factfinder could not find the essential elements—that Appellant wrongfully distributed child pornography, that is a visual depiction of a minor, or what appears to be a minor, engaging in sexually explicit conduct—beyond a reasonable doubt. Furthermore, after our own independent review of the record, we ourselves are not convinced of Appellant's guilt beyond a reasonable doubt. Accordingly, we conclude Appellant's conviction for distribution of child pornography is both legally and factually insufficient and we set aside Appellant's conviction of that offense.

Having set aside Appellant's conviction for Specification 2, we have considered whether we may reliably reassess Appellant's sentence in light of the factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We conclude that we can.

First, we find that setting aside Appellant's conviction for distribution of child pornography results in a dramatic change to the penalty landscape and Appellant's exposure, as our action reduces the maximum imposable term of confinement for the combined convictions from 30 years to 10 years; the remaining elements of the maximum punishment are unchanged. Here Appellant's distribution of child pornography conviction carried the highest maximum term of confinement—20 years. The military judge imposed 16 months' confinement for that offense, to be served concurrently with the term of confinement for the possession of child pornography conviction. The possession conviction carried a 10-year maximum term of confinement, for which the military judge also imposed 16 months' confinement. *See MCM*, pt. IV, ¶ 93.d.

That said, we find the remaining *Winckelmann* factors favor reassessment. First, Appellant was sentenced by a military judge alone, who, as stated above, imposed specific terms of confinement for each offense—16 months—to be

served concurrently. Next, we find the affirmed offense fairly "capture[s] the gravamen of [the] criminal conduct included within the original offenses," namely conduct involving child pornography. *Winckelmann*, 73 M.J. at 16. Finally, the remaining offense is a type with which the judges of this court have "experience and familiarity." *Id.* Accordingly, we are confident we can determine what sentence the military judge would have imposed had Appellant been convicted of only the possession of child pornography offense. *See id.* at 15 (holding CCAs may reassess a sentence if it "can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity") (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)).

Based on our experience and familiarity, and taking all factors into consideration, we conclude that the military judge would have imposed a sentence of at least 16 months' confinement, a bad-conduct discharge, and reduction to E-1 for Appellant's possession of child pornography conviction. Accordingly, we reassess the sentence to consist of a bad-conduct discharge, confinement for a total of 16 months, and reduction to the grade of E-1.

### III. CONCLUSION

The finding of guilty as to Specification 2 of the Charge is **SET ASIDE**. Specification 2 of the Charge is **DISMISSED WITH PREJUDICE**. We reassess the sentence to a bad-conduct discharge, confinement for 16 months, and reduction to the grade of E-1. The remaining findings of guilty and the sentence, as reassessed, are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the remaining findings and the reassessed sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court